# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

BENEDICT MOHIT,

*Plaintiff,*

-v-

CASE NO.: 8:23-cv-2025-8pm
SDM-SPF

CITY OF HAINES CITY, a local government entity
and a Political Subdivision of the State of Florida,

*Defendant.*

_____/

## COMPLAINT FOR DECLARATORY AND
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

## INTRODUCTION

1.      The Plaintiff Benedict Mohit ("MOHIT") brings this action pro se against the City of Haines City ("CITY") seeking relief for the CITY's alleged improperly enacted regulations that impede his constitutionally and statutorily protected agricultural activities on his property. This case revolves around the clash between MOHIT's rights as an agricultural landowner and the CITY's attempts to regulate and limit his farm operations in contravention of state and federal laws.

TRO-69155
#402

2.     MOHIT, a dedicated farmer and landowner, has sought to cultivate his land in accordance with established Best Management Practices ("BMPs") developed by Florida Department of Agriculture and by regulations and conservation codes promulgated by state and federal agencies. He has consistently adhered to these BMPs and regulations in order to engage in legitimate agricultural activities that include cultivating crops, raising livestock, and maintaining his property for the betterment of his family and community.

3.     However, the CITY's Land Development Regulations ("LDRs") have significantly hindered MOHIT's ability to exercise his rights as an agricultural landowner. These regulations prohibit or severely restrict the very activities that state and federal laws are designed to protect. Despite MOHIT's efforts to comply with BMPs and relevant statutes, the CITY's actions have improperly stifled his agricultural pursuits, undermined the economic value of his property, and infringed upon his constitutionally guaranteed rights.

4.     This Complaint seeks to redress the CITY's actions that run counter to established laws, regulations, BMPs, and court decisions. MOHIT seeks declaratory and injunctive relief, as well as appropriate damages, to restore his rights to engage in constitutionally protected agricultural activities without undue interference from the CITY's LDRs.

2

**PARTIES**

5.      The Plaintiff Benedict Mohit ("MOHIT") is an individual and the rightful owner of the property located in a residential district of the City of Haines City, which is the subject of the present controversy. MOHIT engages in legitimate agricultural activities on the aforementioned property, adhering to state and federal agricultural BMPs, guidelines, and regulations.

6.      The Defendant City of Haines City ("CITY") is a political subdivision organized and existing under the laws of the State of Florida, and maintains its principal office at Haines City, Polk County, Florida. The CITY is responsible for the enactment and enforcement of LDRs that impact the agricultural activities and property rights of MOHIT and other farmers.

**JURISDICTION**

7.      This Court has subject matter jurisdiction over the claims brought forth in this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction) as the case involves federal statutes, including but not limited to The Clean Water Act, 33 U.S.C. § 1251 et seq.; The Declaratory Judgment Act, 28 U.S.C. § 2201(a); 42 U.S.C. § 1983; and constitutional claims arising under The Fifth Amendment and The Fourteenth Amendment of the United States Constitution.

8.      Pursuant to 28 U.S.C. §§ 2201(a) and 2202, this Court has jurisdiction to grant declaratory relief with respect to the rights and legal relations of the Parties.

9.      This Court also possesses jurisdiction over the claims asserted under 42 U.S.C. § 1983, as the Complaint alleges violations of constitutional rights and seeks remedies for such violations.

10.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claims occurred within the Middle District of Florida, Tampa Division, where the City of Haines City is located. Additionally, this is the district in which the real property at issue is situated.

## FACTUAL BACKGROUND

### *Clean Water Act*

11.     *Maslow* theorized that the basic and highest-priority needs essential for human survival are wholesome food, clean air, and unpolluted water, all of which are provided by agriculture. But pollution of our water resources and degradation of our agricultural lands face escalating threats by urban development. At the present land degradation rate, in less than 150 years from today, Florida would have no arable land left. Food security; clean, fresh air; and unpolluted water for Floridians is in perilous danger. Recognizing these challenges, Florida Legislature has largely

4

reserved the regulation of commercial agricultural lands to the State, thereby, restricting local government interference.

12.    The Clean Water Act, 33 U. S. C. § 1251 et seq. ("CWA"), was enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."

13.    The CWA is a cornerstone of the federal effort to protect the environment. The CWA gives states the primary authority to regulate agricultural nonpoint sources of water pollution. The CWA, including §§ 1329 and 303, requires the State of Florida to develop and adopt BMPs for agricultural purposes to protect against degradation of the physical, chemical, and biological attributes of our waters.

### *Florida's Effort to Prevent Water Pollution*

14.    To meet the mandate of the CWA, Florida Legislature enacted the Florida Air and Water Pollution Control Act, which directs Florida Department of Environmental Protection and Florida Department of Agriculture to develop BMPs to address agricultural nonpoint sources of water pollution. For this purpose, the Florida Legislature enacted §823.14, Fla. Stat., Florida Right to Farm Act, and §163.3162, Fla. Stat., Agricultural Lands and Practices, to preempt from local government regulations, agricultural purposes implemented via state adopted agricultural BMPs and via federally adopted soil and water conservation codes.

15.     BMPs Rule 5M-8, adopted under Chapter 120, Florida Administrative Code ("FAC"), which pertains to Florida's Vegetable and Agronomic Crops, furnishes specific guidelines regarding the optimal harvesting stages for Bermuda grass, indicating that the recommended time for harvest falls within the 15 to 18-inch height range, as outlined in the Florida Department of Agriculture's BMPs. (Exhibit F, Ex. @ 16 - BMPs for Florida Vegetables and Agronomic Crops).

### *The City's Land Development Regulations*

16.     The City of Haines City enacted and enforces a set of LDRs that dictate permissible land uses and activities within its various zoning districts.

17.     Specifically, Sec. 5.6.3 (B) of the LDRs (Exhibit H, Ex. @ 19 – Challenged LDRs) outlines the permitted principal uses within the R-2 single-family residential district, where MOHIT's property is situated. These uses include single-family dwellings, public recreational facilities, schools and colleges, houses of worship, and cemeteries. Notably, the LDRs does not expressly list agriculture, poultry farming, aquaculture, apiculture, or equine activities as permitted uses nor does it list farm storage buildings, barns, stables, coops, pens, bee hives, or roads, as a permitted use or structure in the R-2 district.

18.     Sec. 5-2, LDRs (Exhibit H, Ex. @ 21) makes it unlawful to keep any pig, goat, sheep, horse, cow, or cattle within the City limits.

6

19.     Sec. 5.6.3 (E) of the LDRs (Exhibit H, Ex. @ 20) stipulates that a rezoning or conditional use permit is mandatory for conducting certain agricultural activities, such as growing citrus, horticulture, forestry, or the grazing, pasture, and growing of hay.

20.     Each of the agricultural purposes specified under the LDRs is subject to regulation through the state adoption of BMPs, which are incorporated as Rules under Chapter 120 of the FAC (Exhibit D, Ex. @ 8-12; BMPs adopted under FAC). These BMPs encompass guidelines for various agricultural activities, including citrus crops (Rule 5M-16), horticulture (Rule 5M-8), forestry (Rule 5I-6), livestock (Rule 5M-11), and hay production (Rule 5M-8).

21.     The CITY's LDRs lacks provisions that explicitly exempt *bona fide agricultural activities* conducted on lands classified as agricultural under §193.461, Florida Statutes (Exhibit H, Ex. @ 19-21), when these activities adhere to state adopted BMPs Rules or federal rules and codes, such as those promulgated by the United States Environmental Protection Agency ("USEPA") or the United States Department of Agriculture ("USDA").

22.     Sec. 5.6.3 (D) (4) of the LDRs (Exhibit H, Ex. @ 20) further states that any use or structure not specifically or provisionally permitted by Sec. 5.6.3 (B) of the LDRs shall be considered prohibited. These regulatory constraints significantly

hinder the ability of individuals like MOHIT to exercise their constitutionally protected right to engage in legitimate agricultural activities on their property.

23.     In a pivotal development, during a 2015 state court hearing, the CITY acknowledged that certain provisions of its LDRs needed revision to align with state statutes, particularly §§163.3162 and 604.50, Fla. Stat. (Exhibit K, Ex. @ 36, Circuit Court Transcript). This acknowledgment underscored the incongruity between the LDRs and state laws with regard to regulating commercial agricultural activities.

24.     Given these circumstances, the CITY's LDRs has emerged as a central point of contention in the present litigation, as MOHIT contends that the LDRs unlawfully restricts his legitimate agricultural pursuits and violates his constitutional rights.

### *Use of Farm Property by MOHIT*

25.     MOHIT is the lawful owner of a 20-acre property, formerly an abandoned citrus farm, situated in the R-2 single-family residential district within the City. This property was acquired by MOHIT twelve years ago, with the intent to engage in state and federally regulated commercial agricultural activities and to establish a family home with the proceeds from his farm products.

26.     Since May 2012, MOHIT diligently pursued his agricultural aspirations by establishing a Bermuda grass hay crop on his farm, adhering to the BMPs Rule

5M-8, adopted under Chapter 120, FAC, and by conducting farm operations that conform to generally accepted agricultural and management practices.

27.     The Florida Department of Agriculture has duly issued a farm Notice of Intent, No.41276, to MOHIT, acknowledging, advising on, and permitting the implementation of BMPs Rule 5M-8 for growing vegetables and agronomic crops, including his grass crops. (Exhibit C, Ex. @ 7, Notice of Intent of Rule 5M-8).

28.     Polk County Property Appraiser has consistently classified MOHIT's farm as agricultural land in accordance with §193.461, Florida Statutes, recognizing the bona fide agricultural purposes for which the property is primarily used. (Exhibit B, Ex. @ 6, Property Appraiser's Classification).

29.     MOHIT's farm encompasses 1.3 acres of agricultural wasteland (Exhibit B, Ex. @ 6), intended for excavation to create an irrigation pond, sedimentation pond, and aquaculture facility, alongside grading to diminish stormwater runoff. This would effectively eliminate any potential for nonpoint sources of water pollution or impairment stemming from his farm operations.

30.     MOHIT's agricultural practices have been carried out in accordance with Code 340 - Cover Crop, Conservation Practice Standard, as adopted by the National Resources Conservation Service of the USDA. (Exhibit E, Ex. @ 14, NRCS, Conservation Practice Standard for Cover Crop).

9

31.    However, the CITY's LDRs have posed significant obstacles to MOHIT's agricultural pursuits. The LDRs does not expressly permit various agricultural activities, including poultry, aquaculture, apiculture, equine, or livestock, within the R-2 single-family residential district where MOHIT's property is located.

32.    The CITY's LDRs also imposes stringent requirements and necessitates rezoning or conditional use permits for specific agricultural activities, which are already regulated by state-adopted BMPs and by federal conservation codes. Furthermore, the LDRs explicitly prohibits the keeping of pigs, goats, sheep, horses, cows, or cattle within the City limits.

### *2014 Meeting with City Officials*

33.    In 2014, about two years after establishing his hay crops, MOHIT met with City Officials, Mr. Mark Bennett and Mr. Richard Greenwood, to discuss incorporating livestock on his farm, where he was informed that his agricultural activities would be in violation of the CITY's LDRs. The City Officials threatened punitive actions, including fines and property liens, should MOHIT persist with his agricultural crop pursuits or raising horses on his property.

34.    During the same meeting, MOHIT cited *Schultz v. Love PGI Partners*, LP, 731 So. 2d 1270 (Fla. 1999), which found that land used for cattle farming in

Florida should be excluded from regulations requiring land development permits. However, City Officials contended that the CITY had a Charter Ordinance ("Ordinance") allowing it to disregard the ruling of the Supreme Court of Florida in *Schultz v. Love PGI Partners*.

35.     City Official, Mr. Richard Greenwood, asserted that the CITY's LDRs could impose stricter limits on farming than state law authorizations, and so, the LDRs required MOHIT to apply for a rezoning permit to continue his agricultural activities of growing crops or to raise livestock. He informed MOHIT that his application must list the type and number of animals on the farm while keeping the numbers low to have any chance of an approval.

36.     In response to the CITY's opposition along with the CITY's Charter Ordinance and uncertainty regarding his farming rights, MOHIT temporarily relocated his horses and applied for a rezoning permit (Exhibit I, Ex. 22, Mohit's Rezoning Application), highlighting on the application that his property was classified as agricultural land pursuant to §193.461, Florida Statutes, and that the CITY's permit mandate violated Florida Statutes.

37.     In August 2015, the CITY adopted Resolution No. 15-1153, which constituted a rezoning or conditional use permit for MOHIT to engage in specified agricultural purposes, including his existing crops. This resolution, however,

imposed restrictions, limiting cattle to a maximum of 20 and horses to a maximum of 5. It explicitly prohibited swine or feed lot operations and set a ten-year timeframe for all agricultural purposes and farm operations, making agriculture unlawful after August 06, 2025. The resolution mandated MOHIT's compliance with various provisions, including those within the CITY's LDRs, Code of Ordinance, Growth Management Plan, and relevant Florida Statutes. (Exhibit J, Ex. @ 23-26, City's Resolution, No. 15-1153).

38.    The CITY's Resolution No. 15-1153 enumerated permitted uses, including crops, hay, timber (silviculture), up to 20 cattle, 20 goats, or 5 equines. Notably, each of these agricultural purposes fell under the purview of BMPs adopted as a Rule within Chapter 120 of the FAC. (Exhibit J, Ex. @ 23-26).

### *2014 State Trial Court Proceedings between the Parties*

39.    Subsequent to the CITY's communication via email, where City Officials asserted that MOHIT's proposed livestock would result in a nuisance, MOHIT, acting pro se, initiated legal action against the CITY in October 2014, filing a complaint in Polk County Circuit Court. This complaint alleged that the CITY had unlawfully enacted regulations that effectively prohibited his intended livestock operations. It is important to note that in this initial complaint, MOHIT inadvertently

omitted any reference to the regulatory framework governing livestock, particularly BMPs Rule 5M-11, adopted under Chapter 120 of the FAC.

40.    In response, the CITY filed a Motion to Dismiss MOHIT's 2014 state complaint. Within this Motion, the CITY contended that their municipal regulations mandated prior authorization for any development activity, as delineated within the CITY's LDRs. The CITY emphasized that its regulations encompassed a broad definition of "development," which incorporated "A man-made change to improve or unimproved real estate, including, but not limited to, buildings, grading, excavating, storage, etc." It is essential to highlight that the CITY stated the definition of "development" under Sec. 4.2.1 of its LDRs did not expressly exclude agricultural or farming activities. (Exhibit Q. Ex. @ 48-49, City's Definition of Development).

41.    In December 2014, the CITY submitted a subsequent pleading in which it expressly conceded that: "*CITY readily acknowledges that Section 163.3162 (3) (Duplication of Regulation) provides the express limitation that "A local governmental entity may not exercise any of its powers to **adopt or enforce** any ordinance, resolution, regulation, rule or policy to prohibit, restrict, regulate or otherwise limit an activity of a bona fide farm operation on land classified as agricultural land pursuant to s. 196.461. "*" (Emphasis in Original) (Exhibit R, Ex. @ 50-51, City's State Court Pleading).

42.     One year later, in October 2015, Polk County Circuit Court convened a hearing to address the CITY's Motion to Dismiss MOHIT's 2014 state complaint. This hearing was attended by prominent City officials, including the mayor, manager, and attorney. During the proceedings, the Circuit Court conveyed a crucial legal perspective to the City Officials. Specifically, the Court emphasized that the Florida Legislature had no intention of subjecting agricultural activities to redundant local regulations, particularly when these activities were already regulated by the state or were the subject of BMPs. (Exhibit K, Ex. @ 30). The Court underscored that in such cases, the CITY had no authority to regulate these farming activities.

43.     Furthermore, the Circuit Court drew attention to the fact that the CITY's ordinance had been enacted subsequent to June 16th, 2000, a pivotal date when the Florida Right to Farm Act came into effect. This Act held significance as it outlined constraints on the CITY's regulatory powers. In response to these observations, Mr. Reilly, the CITY's Attorney, affirmed the applicability of the Statute to the CITY's LDRs. (Exhibit K, Ex. @ 31, Circuit Court's Transcript).

44.     The Circuit Court inquired about the safeguards present within the CITY's ordinance to accommodate the requirements of §§163.3162 and 604.50 of the Florida Statutes. The Court specifically sought to understand how the CITY's Ordinance addressed cases where individuals applied to engage in agricultural activities implemented via state-adopted BMPs. (Exhibit K, Ex. @ 34). The CITY's

14

Attorney, in response, candidly acknowledged the need for revisions within the CITY's code to ensure compliance with these Statutes. (Exhibit K, Ex. @ 36).

45. During the hearing, the CITY disclosed its intention to terminate MOHIT's farming operations after August 2025, citing potential future residential development in the area as the rationale. However, the Circuit Court asserted that the CITY could not prohibit an agricultural activity that was explicitly contemplated under the governing Statutes (Exhibit K, Ex. @ 37-38, Circuit Court's Transcript).

46. The Circuit Court clarified that if an agricultural activity was not regulated by a BMPs Rule, the CITY could potentially regulate it (Exhibit K, Ex. @ 30). This aspect was acknowledged in the CITY's Motion to Dismiss MOHIT's 2014 state complaint, where the CITY contended that MOHIT had failed to allege that his proposed livestock operation fell under a BMPs Rule (Exhibit K, Ex. @29-30).

47. MOHIT asserted during the hearing that he was practicing agriculture in accordance with BMPs, as stipulated by the Florida Department of Agriculture and Consumer Services. However, the Circuit Court noted that this crucial fact, a BMPs Rule for livestock, was not within the scope of MOHIT's initial complaint. This omission was identified by the Court as a significant challenge for its analysis. (Exhibit K, Ex. @ 32-33, Circuit Court's Transcript).

48.     In December 2015, Polk County Circuit Court issued an Order, determining key elements of the case (Exhibit A, Ex. @ 3, Circuit Court Order). These findings included the classification of MOHIT's property as agricultural land under §193.461, Fla. Stat. Moreover, the Court underscored that, pursuant to §§ 823.14 and 163.3162, Fla. Stat., that define farm and farm operations, local governments were prohibited from enacting ordinances, regulations, rules, or policies that aimed to prohibit, restrict, regulate, or otherwise limit activities of bona fide farm operations situated on agricultural land, particularly when such activities adhere to BMPs adopted as Rules under Chapter 120 of the FAC.

### ***BMPs Implemented by MOHIT***

49.     Since 2018, MOHIT has aspired to diversify his agricultural activities on his farm, aiming to incorporate a range of practices. His plan involves the implementation of BMPs sanctioned as Rules under Chapter 120 of the FAC. Furthermore, he intends to adhere to rules established by the USDA and USEPA. These proposed additions encompass transitioning a portion of his hay crops into apiculture (beekeeping), dairy farming, aquaculture, forestry, and poultry farming.

50.     In 2020, MOHIT's vision included raising a total of 30 goats and growing citrus crops. In 2021, buoyed by favorable market conditions, available capital, and cost-effective procurement of seed stock heifers, MOHIT sought to

integrate a 25-heifer cow-calf operation and a 10-mare equine endeavor into his existing crop operations. Additionally, he planned to undertake pond excavation to support irrigation, manage sedimentation, and facilitate aquaculture. Construction of essential farm buildings, installation of barbed wire fences, and the establishment of facilities for storing and repairing farm equipment were also part of his comprehensive agricultural expansion.

51.    MOHIT has consistently demonstrated a commitment to conducting his agricultural pursuits by rigorously implementing agricultural BMPs developed by the Florida Department of Agriculture. These practices, formally adopted as Rules under Chapter 120 of the FAC (Exhibit D, Ex. @ 8-12), span a wide array of agricultural activities, including Florida Poultry as governed by Rule 5M-19 (adopted on 8/25/2016), Florida Citrus under Rule 5M-16, Florida Vegetable and Agronomic Crops according to Rule 5M-8, Florida Cow-Calf Operations guided by Rule 5M-11, Florida Equine Operations regulated by Rule 5M-14, Florida Dairies as overseen by Rule 5M-17 (adopted on 1/10/2016), Aquaculture subject to Rule 5L-3.004 (adopted on 1/9/2017), and Florida Silviculture in accordance with Rule 5I-6.

52.    MOHIT's commitment extends to the implementation of rules established by the USEPA. These regulations encompass EPA 833-F-02-008, which pertains to poultry farming, and EPA 833-F-02-0010, which addresses livestock operations (Exhibit E, Ex. @ 13).

53.    MOHIT is gravely concerned about the August 2025 limitation imposed by CITY's Resolution No. 15-1153. This restriction threatens the forfeiture of both current and future farm investments, all before the farm has the chance to yield any profits. Beyond August 2025, the CITY's LDRs would mandate the removal of existing vegetables and agronomic crops, necessitate the demolition of planned barns, stables, and coops, and even require the unfortunate culling of animals in order to comply with the CITY's LDRs. MOHIT's farm investments are inherently jeopardized, encompassing equine and livestock breeding programs, as detailed in the relevant statutes, exhibits, and references.

54.    The present Complaint arises from the legislative interaction of the Federal-State-Municipality interface on the regulation of commercial agricultural purposes and farm operations in Florida, to prevent water pollution. MOHIT is disputing enactment of the CITY's LDRs and their environmental impact.

## CLAIMS

## COUNT 1

## VIOLATION OF THE CLEAN WATER ACT AND FLORIDA STATUTES

55.    MOHIT reasserts and incorporates by reference paragraphs 1 through 54 of this Complaint.

56.   Count I is levied against the CITY, alleging an ongoing conflict with the CWA and pertinent Florida Statutes designed to address agricultural nonpoint sources of water pollution, including but not limited to §§163.3162, 823.14, 373.406, 604.71, Chapter 163, and Chapter 166.

57.   MOHIT is engaged in the cultivation of Bermuda grass hay crops on his farm through the meticulous implementation of BMPs Rule 5M-8. The Florida Department of Agriculture has duly issued a farm permit to MOHIT, permitting the implementation of BMPs for his grass crops (Exhibit C, Ex. @ 7). Notably, BMPs Rule 5M-8, governing the cultivation of Florida Vegetables and Agronomic Crops, specifies that Bermuda grass should be harvested when it reaches a height of 15 to 18 inches. (Exhibit F, Ex. @ 16).

58.   However, Section 11-40 and Section 11-42 of CITY's LDRs unilaterally prohibit the growth of grass exceeding 12 inches in height within the residential district where MOHIT's farm is situated. In August 2018, CITY issued a nuisance citation to MOHIT, accompanied by a daily fine of $250.00, citing the excessive height of his grass crops (Exhibit L, Ex. @ 39, Nuisance Citation).

59.   It is imperative to recognize that grass crops maintained at a height less than 12 inches are inherently associated with agricultural nonpoint sources of water pollution. Such low vegetative ground cover lead to heightened soil erosion,

sedimentation, and runoff into vital water bodies, including streams, tributaries, rivers, lakes, wetlands, and estuaries. Moreover, they contribute to water quality degradation through elevated nitrogen and phosphorous content resulting from stormwater and irrigation runoff, alongside leaching into aquifers. This, in turn, triggers detrimental consequences such as exacerbated algal blooms, proliferation of noxious weeds, and the presence of floating aquatic plants. It also facilitates the transmission of pathogens, including coliform bacteria, and exacerbates contamination from chemical, herbicide, and pesticide residues infiltrating our waters, including the Everglades National Park.

60.     The enforcement of grass crop heights below 12 inches renders MOHIT incapable of generating any profits from his agricultural endeavors, effectively rendering his farm economically unviable. This, in essence, signifies that MOHIT's agricultural land is rendered fallow during the course of this lawsuit. Fallow farmland, devoid of adequate cover crops and the implementation of BMPs, consequently contributes to nonpoint sources of water pollution and impairment. This arises from reduced evapotranspiration, aggravated wind and water erosion, and the generation of sediment-loaded stormwater runoff laden with pathogens and chemical contaminants.

61.     Article VIII, Section 2(b), Florida Constitution, states that municipalities do not have municipal power to conduct actions expressly prohibited

by State Laws. Thus, in accordance with §§163.3162(3) and 823.14(6), Florida Statutes, specifically the Florida Right to Farm Act, and in alignment with the directives outlined in the Polk County Circuit Court Order (Exhibit A, Ex. @ 3), the promulgation of Section 11-40 and Section 11-42 within CITY's LDRs constitutes an alleged "duplication of the State of Florida's regulation" concerning agronomic crops. Additionally, these regulations are posited as being in direct conflict with state and federal regulations pertaining to agricultural BMPs and conservation codes for the management of nonpoint sources of water pollution on MOHIT's farm.

62.     Consequently, Section 5.6.3, Section 11-40 and Section 11-42 of CITY's LDRs are viewed as conflicting with the BMPs articulated within Rule 5M-8 and with USDA NRCS Code 340 governing grass crop cultivation. In light of this conflict, MOHIT asserts that CITY's LDRs are incongruous with the overarching objectives and intentions of the CWA, Florida Air and Water Pollution Control Act, Florida Right to Farm Act, and §163.3162, Florida Statutes and thus, the Nuisance Citation, is in conflict with the full purpose and intent of § 823.14, Fla. Stat., and with the CWA.

63.     In light of these circumstances, MOHIT seeks declaratory relief and financial compensation for the deprivation of the economically beneficial and productive use of his farm property.

## COUNT II

## VIOLATION OF FLORIDA APIARY STATUTES

64.     MOHIT reasserts and incorporates by reference paragraphs 1 through 54 of this Complaint.

65.     MOHIT alleges that due to the prohibition, restriction, regulation, or limitation of his desire to engage in apiculture (honeybee farming) on his agricultural classified land by the CITY, through ordinances, regulations, resolutions, rules, or policies, and by mandating a rezoning permit for him to pursue apiculture on his agricultural classified property, MOHIT has suffered various losses.

66.     Section 586.10, Florida Statutes, explicitly outlines that the authority to regulate, inspect, and permit managed honeybee colonies, including determining the placement and location of registered, inspected managed honeybee colonies, is precluded to the state through the Department of Agriculture. This statute supersedes any related ordinances enacted by counties, municipalities, or political subdivisions. Moreover, Section 586.055, Florida Statutes, affirms that an apiary, which encompasses honey beekeeping and apiculture, may be situated on lands classified as agricultural under Section 193.461, Florida Statutes.

67.     Bees play an indispensable role in the pollination, ground cover and root establishment of MOHITs vegetables and agronomic crops, leading to reduced

nonpoint sources or water pollution, increased crop yield and farm profitability. In addition to their ecological importance, beekeeping can be a lucrative venture.

68.     However, the CITY's LDRs, including but not limited to, Section 5-2, Section 5.6.3(D), Section 20.2.1, and Section 20.2.2, along with Section 5.6.3(E), impose direct restrictions on MOHIT's ambition to engage in apiculture. These regulations run counter to the clear purpose and intent of Sections 586.10 and 586.055, 163.3162(3), and 823.14(6), Florida Statutes, thereby violating state laws.

69.     In light of these circumstances, MOHIT seeks legal redress for these violations of state laws and prays for declaratory relief, financial compensation, and the removal of impediments to his legitimate apiculture activities.

## COUNT III

## VIOLATION OF FLORIDA STATUTE ON GROWING VEGETABLES

70.     MOHIT reaffirms and incorporates by reference paragraphs 1 through 54 of this Complaint.

71.     Count III is brought against the CITY in response to its attempts to restrict or regulate the cultivation of vegetables, agronomic crops, and fruits, including citrus, on MOHIT's farm through local ordinances or regulations.

72.     Section 604.71 of the Florida Statutes explicitly dictates that municipalities and other political subdivisions within the state are not authorized to regulate vegetable gardens on residential properties. Any such local ordinance or regulation pertaining to vegetable gardens on residential properties is declared void and unenforceable.

73.     Consequently, the CITY is legally prohibited from implementing any regulation that is both void and unenforceable, and which aims to obstruct, curtail, control, or otherwise impede the cultivation of vegetables, fruit or agronomic crops on MOHIT's agricultural property.

74.     In light of these circumstances, MOHIT demands the elimination of any unwarranted restrictions or regulations imposed by the CITY on the growth of vegetables, fruits, and agronomic crops on his farm, pursuant to Section 604.71 of the Florida Statutes, and he seeks financial compensation for violation of state law.

## COUNT IV

### LACK OF AUTHORITY TO MANDATE REZONING OR LAND DEVELOPMENT PERMIT UNDER FLORIDA STATUTES

75.     MOHIT reaffirms and incorporates by reference paragraphs 1 through 54 of this Complaint.

24

76.     Count IV is filed against the CITY in response to its imposition of rezoning or land development permit mandates, which MOHIT is compelled to adhere to for the continued cultivation of his crops, as well as the establishment of his proposed beekeeping, silviculture, aquaculture, poultry, or livestock operations. Furthermore, it addresses the CITY's prior threats to cease MOHIT's farming activities based on alleged violations of the CITY's LDRs, involving crop cultivation and horse keeping, without the prerequisite rezoning permit.

77.     The CITY derives its authority to enact LDRs through the Municipal Home Rule Powers Act, Chapter 166 of the Florida Statutes, and Chapter 163, Part II, Land Development Regulations of the Florida Statutes.

78.     According to Section 166.033(4) of the Florida Statutes, "development permit" and "development order" share the same meanings as specified in Section 163.3164 of the Florida Statutes. Furthermore, Section 163.3164(16) explicitly defines "development permit" as encompassing zoning permits, rezoning actions, special exceptions, variances, or any other official actions undertaken by local government that effectively authorize land development. In addition, Section 163.3164(14) of the Florida Statutes clarify that "development" corresponds with the definition outlined in Section 380.04 of the Florida Statutes.

79.     Section 380.04(3)(e) of the Florida Statutes defines "development" and specifically exempts certain operations and uses from the classification of "development," including the utilization of land for the purpose of cultivating plants, crops, trees, or other agricultural or forestry products, raising livestock, or other agricultural purposes.

80.     Sections 163.3162(3) and 823.14(6) of the Florida Statutes, in part, prohibit a local government from adopting regulations, resolutions, ordinances, rules, or policies aimed at preventing, restricting, governing, or curtailing agricultural activities conducted on agriculturally classified land, provided that these activities are implemented via a state-adopted or federally-adopted BMPs Rule.

81.     Therefore, it is MOHIT's contention that the CITY lacks the authority to enact or enforce mandates for rezoning or development permits concerning agricultural activities on his property. Additionally, the CITY's alleged transgression in this regard deprives MOHIT of all economically viable and productive use of his land for commercial farming, necessitating compensation as per the Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT V

### VIOLATION OF THE FLORIDA RIGHT TO FARM ACT, AGRICULTURAL LANDS AND PRACTICES, AND STATE REGULATIONS ON AGRICULTURE

82.     MOHIT reasserts and incorporates by reference paragraphs 1 through 54 of this Complaint.

83.     MOHIT asserts Count V against the CITY, alleging violations of the Florida Statutes § 823.14, Florida Right to Farm Act, Florida Statutes §163.3162, and state-adopted regulations governing vegetables and agronomic crops.

84.     MOHIT maintains that the CITY's LDRs, as set forth in Sections 5-2; 5.6.3 (B), (D), (E); 5.2.1 (A5), (D); 11-40, and 11-42, constitute an infringement upon the rights afforded to agricultural landowners under § 823.14, specifically the Florida Right to Farm Act, and §163.3162, of the Florida Statutes.

85.     MOHIT avers that the CITY's LDRs, specifically Sections 5-2; 5.6.3 (B), (D), (E); 5.2.1 (A5), (D); 11-40, and 11-42, impose prohibitions, restrictions, regulations, and limitations on his agricultural activities, including the cultivation of crops and the operation of a 25-heifer cow-calf or a 10-mare equine operation, thereby infringing upon the rights protected by § 823.14 and §163.3162 of the Florida Statutes.

86.     MOHIT highlights the provisions of §§ 163.3162(3)(c) Florida Statutes, which explicitly prohibit a governmental entity from charging an assessment or fee for stormwater management on a bona fide farm operation classified as agricultural land pursuant to § 193.461, Florida Statutes, if the farm

implements BMPs developed by Florida Department of Agriculture, and adopted as a rule under Chapter 120, FAC.

87.    MOHIT presents Exhibit P, Polk County Property Appraiser's Tax Receipts, as evidence of the CITY's assessment of $221.00 and $53.00 annually for stormwater management on MOHIT's farm, in direct contravention of the statutory provisions mentioned above.

88.    MOHIT recalls the CITY's threats of fines and property liens in July 2014 for non-compliance with these fees, which MOHIT contends are unlawful under Florida Statutes.

89.    MOHIT underscores that Florida Statutes, §§ 163.3162(3) and 823.14(6), specify that local governments are expressly prohibited from adopting any regulation, resolution, ordinance, rule, or policy to prohibit, restrict, regulate, or otherwise limit crops grown on land classified as agricultural when these crops are cultivated via BMPs, adopted as Rule 5M-8 under Chapter 120, FAC.

90.    MOHIT submits Exhibit D, which outlines the regulations governing Florida Vegetables and Agronomic Crops under BMPs Rule 5M-8, highlighting the incongruity between these BMPs and the CITY's LDRs, particularly Section 4.2.1, Section 11-40, and Section 11-42.

91.     MOHIT contends that the CITY's LDRs, by restricting crop heights to 12 inches, effectively contradicts BMPs Rule 5M-8's guidance on Bermuda grass cultivation, as evidenced in Exhibit F, @ 16.

92.     MOHIT asserts that the CITY's LDRs are in direct conflict with the intent and purpose of Florida Statutes, including but not limited to §§ 604.001, 823.14, 163.3162, and 193.461, all of which emphasize the promotion, development, preservation, and improvement of agriculture for the benefit of the health, safety, and welfare of the people of Florida.

93.     In light of these violations of the Florida Right to Farm Act, Agricultural Lands and Practices, and related state regulations, MOHIT seeks declaratory relief and financial compensation for the infringement upon his rights and the economic detriment caused by the CITY's actions.

## COUNT VI

### RESTRICTION OF FARM STRUCTURES AND EQUIPMENT IN VIOLATION OF STATE LAW

94.     MOHIT reaffirms and incorporates by reference paragraphs 1 through 54 of this Complaint.

95.     Count VI is brought against the CITY due to its interference with MOHIT's intent to construct various essential agricultural structures and to maintain and repair necessary farming equipment on his farm.

96.     MOHIT seeks to establish a greenhouse for crop cultivation, a farm storage building for equipment, fertilizer and hay drying, a barn for heifers, a stable for horses, and a poultry coop for chickens. Furthermore, he wishes to retain, store, and perform maintenance on his farm tractors and equipment critical for crop cultivation and to construct topographical structures to prevent nonpoint sources of water pollution. Erecting various types of fences to safeguard his crops and animals, and to secure topographical conservation structures, is also part of MOHIT's agricultural plans.

97.     Farm buildings, including structures for hay drying, fertilizer storage, animal housing, and equipment maintenance, are indispensable components of MOHIT's agricultural operations. Fences are essential for containing and segregating animals, protecting against predators, and preserving the integrity of pastures. Farm equipment is vital for crop cultivation, field excavation, grading, and the creation of sediment trapping topographical features to prevent water pollution.

98.     However, the CITY's LDRs, as articulated in Section 4.2.1; Section 11.4.2; Section 5.6.3(B), (D) and (E); and Section 5.2.1(A5) and (D), impede,

30

restrict, regulate, or otherwise constrain the construction of farm buildings, installation of farm fences, and storage of farm equipment on MOHIT's property. These regulations additionally impose permitting requirements for such farm structures and equipment. Furthermore, CITY's Resolution No. 15-1153 imposes time limitations on all farm structures and equipment until August 2025.

99.     Section 604.40 of the Florida Statutes, which pertains to farm equipment, unequivocally states that farm owners may store, maintain, or repair all power-drawn, power-driven, or self-propelled equipment on their farms, provided it is kept at least 50 feet away from public roads, without any restrictions.

100.    Section 604.50 of the Florida Statutes addresses farm buildings and farm fences, explicitly exempting them from county or municipal codes if located on lands employed for bona fide agricultural purposes.

101.    Both Section 823.14, Florida Right to Farm Act, and Section 163.3162 of the Florida Statutes define a farm as encompassing land, buildings, support facilities, machinery, and other components employed in the production of farm products.

102.    Consequently, the CITY's LDRs, as delineated in Section 4.2.1; Section 11.4.2, Section 5.6.3(B), (D) and (E), and Section 5.2.1(A5) and (D), are

31

alleged to contravene the comprehensive intent and purpose of Sections 163.3162, 193.461, 823.14, 604.40, and 604.50 of the Florida Statutes.

103.   In light of these circumstances, MOHIT seeks redress for these violations of state law and requests declaratory relief, financial compensation, and the removal of impediments to his legitimate agricultural endeavors, including the construction of necessary structures and equipment storage on his farm.

## COUNT VII

### VIOLATION OF DUE PROCESS

104.   MOHIT reasserts and incorporates by reference paragraphs 1 through 54 of this Complaint.

105.   Count VII is levied against the CITY alleging a violation of MOHIT's Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

106.   MOHIT's rights to cultivate vegetables and agronomic crops and to raise 25 heifers or 10 horses via implemented state-adopted BMPs on his agricultural classified land are impeded by the CITY's LDRs, leading to a conflict with the Clean Water Act (CWA) and several Florida Statutes pertaining to agriculture.

107.   Section 163.3162 (3) (c), Fla. Stat., expressly prohibits governmental entities from imposing fees for stormwater management on bona fide farm operations implementing BMPs Rules as per Chapter 120, FAC. Still, the CITY levies annual stormwater management fees of $221.00 and $53.00 on MOHIT's farm (Exhibit P, Ex. @ 46-47, Tax Receipts) and threatened MOHIT with fines and a property lien for non-compliance with CITY's LDRs in July 2014.

108.   Pursuant to Chapter 166, Fla. Stat., The Municipal Home Rule Powers Act, the CITY enacted Sections 4.2.1; 5-2; 5.6.3 (B), (D), (E); 5.2.1 (A5), (D); 11-40, and 11-42 of its LDRs, affecting all farmers, impose prohibitions, restrictions, and regulations on MOHIT's crop cultivation, silviculture, apiculture, citrus, 25-heifer cow-calf, or 10-mare equine operations, and lead to duplication of state regulations concerning MOHIT's crop cultivation and proposed farming activities.

109.   Florida Statutes, §§ 163.3162 (3) and 823.14 (6), explicitly forbid local governments from enacting or enforcing regulations or policies limiting crops grown on agricultural land, where the crops are implemented via BMPs Rule 5M-8 adopted under Chapter 120, FAC. Further, Chapters 163 and 166 of the Florida Statutes, define "development" and "development permit," as excluding land used primarily for agricultural purposes and emphasizing zoning permits, rezoning, special exceptions, variances, or other official actions for land development. Consequently, the CITY's LDRs seemingly conflict with Chapters 163, 166, §586.10, §586.055,

§604.40, § 604.50, §163.3162 (3) and (3c), and § 823.14 (6), Fla. Stat. Furthermore, the CITY may lack home-rule powers to demand permits or permissions for crop cultivation and livestock raising on agricultural classified land. Sections 163.3162 (3), 823.14 (6), Chapter163, and Chapter166, Fla. Stat., are claimed to preempt the CITY's LDRs concerning crop growth and livestock raising on agricultural land implementing state-adopted BMPs Rules, as affirmed by the Florida Trial Court in its 2015 Order (Exhibit A, Ex. @ 3, Circuit Court Order).

110.   Hence, the CITY's LDRs allegedly fail to align with the full intent and comprehensive purpose of Chapter163, Chapter166, §163.3162 (3), and §823.14 (6), Fla. Stat., making them seemingly unreasonable, arbitrary, and capricious.

111.   In 2014, City Officials communicated to MOHIT that his proposed livestock operation would be deemed a nuisance. The CITY's LDRs, Sec. 11-40, categorizes excessive grass growth as a public health, safety, and welfare nuisance. MOHIT received a nuisance citation for his crops violating these nuisance regulations. The CITY's LDRs further limited MOHIT's existing crops and his proposed silviculture and livestock operations. But MOHIT asserts that his crops and planned silviculture and livestock operations meet the preemption conditions stipulated in §§ 163.3162 (3) and 823.14 (6), Fla. Stat., as his land is agricultural, and he adheres to state and federally adopted BMPs rules and conservation codes.

34

112.   Florida Legislature, in §§ 604.001, 823.14, and 163.3162, Fla. Stat., recognizes the positive impact of agriculture on the public health, safety, welfare, and economy of the state. Accordingly, the CITY's LDRs allegedly conflict with the legislative intent outlined in §§ 604.001, 823.14, and 163.3162, Fla. Stat.

113.   Due to these circumstances, MOHIT asserts that the challenged CITY's LDRs, as detailed in paragraphs 106 to 112, violate his rights to due process under the Constitution.

114.   MOHIT holds protected property interests in his agricultural classified land, which includes the right to grow vegetables and agronomic crops and to raise bees, 25 heifers or 10 horses by implementing state-adopted BMPs Rules.

115.   The CITY, as a government entity, is responsible for the enactment and enforcement of the LDRs, thereby constituting state action.

116.   The CITY, in issuing nuisance citations and imposing stormwater management fees, failed to provide MOHIT with proper notice and an opportunity to be heard regarding the alleged violations of its LDRs, thereby depriving him of procedural due process.

117.   The CITY's LDRs as described in paragraphs 107 to 109, are allegedly arbitrary, unreasonable, and lack a rational basis, as they conflict with Florida Statutes, expressly prohibiting charges for stormwater management on agricultural

land implementing BMPs, and the LDRs do not promote the general health, safety, and welfare of the people of Florida.

118.   MOHIT's fundamental rights to use his agricultural land for farming purposes, as protected by Florida Statutes and by federal laws and regulations, have been violated by the CITY's actions and LDRs.

119.   The CITY's interests in enforcing the LDRs do not outweigh MOHIT's interests in the productive and lawful use of his property for commercial farming.

120.   The CITY's enactment and enforcement of the LDRs directly led to the harm suffered by MOHIT, including the imposition of fines, fees, and restrictions on his bona fide agricultural activities.

121.   As a result of the CITY's actions and LDRs, MOHIT has been denied all economically beneficial or productive use of his property for commercial farming, thereby, rendering his farm economically worthless.

122.   MOHIT contends that the CITY's actions and LDRs, as described herein, constitute a violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, for which he seeks appropriate relief, including compensation for the harm suffered and for a taking of his farm property.

123.   This count asserts that the CITY's enactment and enforcement of LDRs without due process has deprived MOHIT of his protected property interests and violated his constitutional rights, and so, MOHIT seeks compensation accordingly.

## COUNT VIII

## VIOLATION OF EQUAL PROTECTION OF LAWS

124.   MOHIT, hereby reasserts and incorporates by reference paragraphs 1 through 54 of this Complaint.

125.   MOHIT brings his Equal Protection claim against the CITY under 42 U.S.C. §1983, and the Fifth and Fourteenth Amendments to the United States Constitution, as a class of one or compared to one other similarly situated farm.

126.   In 2012, the CITY adopted Resolution No.12-1009 permitting Grullon to keep an unlimited number of livestock and of any species on his farm. (Exhibit N, Ex. @ 42-44, City's Resolution, No. 12-1009). The CITY did not limit or restrict the size, weight, or height of the animals, nor prohibit swine or feed lot operations on Grullon's farm. And Florida Livestock is regulated by BMPs Rule 5M-11, adopted under Chapter 120, FAC. (Exhibit D, Ex. @ 8.)

127.   MOHIT claims that the CITY, while acting under the color of the law and in compliance with §§ 163.3162 and 823.14, Fla. Stat., treats his farm worse

than Grullon's farm, and that the CITY has no rational basis for this disparate treatment, thereby, denying him of equal protection of the law afforded under the Fifth and Fourteenth Amendments to the United States Constitution.

128.   MOHIT affirms that by virtue of his race, color, and national origin; and because of his dark skin color, speaking with a foreign accent, and being from the Caribbean; that the alleged ongoing disparate treatment by the CITY is intentional because of these virtues of his, and also, because at the July 2014 meeting with City Officials, MOHIT challenged the Officials and the LDRs, and he wrote at the top of the rezoning permit application that such a mandate violates Florida Laws. MOHIT further asserts that the CITY, via Resolution No. 15-1153, punished him by prohibiting, restricting, regulating, or limiting his agricultural purposes and farm operations.

129.   Pursuant to §§ 163.3162 (3) and 823.14 (6), Fla. Stat., the two preemption conditions make Grullon's farm equal to MOHIT's farm in all respects because: (1) both farms are classified as agricultural land pursuant to §193.461, Fla. Stat., and (2) both farms are implementing BMPs adopted as Rules under Chapter 120, FAC for their farm products, and therefore, both farms are beyond the reach of the challenged restrictive LDRs, enacted and enforced by the CITY.

130.   Florida Statutes, §§ 163.3162 (3), states specifically that a local government may not use any of its powers to adopt a resolution to prohibit, restrict, regulate, or limit an agricultural activity conducted on land classified as agricultural pursuant to §193.461, Fla. Stat., where the activity is implemented via BMPs adopted as a Rule under Chapter 120, FAC, or when the activity is implemented via a Rule adopted by the USEPA or USDA. In the 2014 case between the parties, Polk County Circuit Court told the CITY that pursuant to §163.3162, Fla. Stat., "*If someone applies for something that is otherwise the subject of a best management practice or regulated by the state, you must look at that application and say - what they want to do, we don't have any business regulating it.*" (Exhibit K, Ex. @ 34.)

131.   In 2015, the CITY adopted Resolution No.15-1153 permitting MOHIT to grow his existing crops and to raise a maximum of 20 cattle or 5 horses on his farm, on a rotational basis. The Resolution specifically prohibits MOHIT from maintaining swine or animal feed lot operations. And the Resolution limits crops, silviculture, cattle, and horses up to August 6, 2025. (Exhibit J, Ex. @ 24-25.)

132.   MOHIT implements BMPs Rule 5M-8, adopted under Chapter 120, FAC, for growing his crops. MOHIT also implements NRCS Code 340 – Cover Crop, adopted by U.S. Department of Agriculture, for growing his hay crops. The U.S. Environmental Protection Agency (USEPA) regulates animal feed lot

operations through regulations, including EPA 833-F-02-007 for swine, EPA and EPA 833-F-02-0010 for cattle. (Exhibit E, Ex. @ 13).

133.   Further, CITY's LDRs and CITY's Resolution No. 15-1153 restricts the height of MOHIT's crops to 12 inches; limits the number and species of his livestock; and limits all his farm operations up to August, 2025.

134.   MOHIT asserts that the CITY, acting under the color of law and in compliance with §§ 163.3162 and 823.14, Fla. Stat., treats his farm worse than  the Grullon's farm, without any rational basis for this disparate treatment. This treatment denies MOHIT equal protection of the law as afforded under the Fifth and Fourteenth Amendments.

135.   MOHIT further contends that the ongoing disparate treatment by the CITY is intentional due to MOHIT's race, color, national origin, and other personal characteristics, as well as his prior challenges to the CITY's LDRs. MOHIT claims that the CITY's actions were punitive, including the adoption of Resolution No. 15-1153.

136.   Due to these circumstances, MOHIT asserts that the challenged CITY's LDRs, as detailed in paragraphs 126 to 133, violates his rights to due process under the Constitution. And the CITY has no rational basis for enacting any ongoing regulation or adopting any resolution to prohibit, restrict, regulate, or limit MOHIT's

crops or his proposed 25-heifer livestock operation. In doing so, the CITY denies him equal protection of the law for which he is entitled to compensation.

## **PRAYER FOR RELIEF**

For these reasons, the Plaintiff prays for the following relief:

### **I. Declaratory Relief**

1.  A declaration, order, and judgment declaring that the Defendant is barred from enforcing specific sections of its Land Development Regulations against the Plaintiff's Vegetables and Agronomic Crops, specifically cultivated under BMPs, adopted as Rule 5M-8 under Chapter 120, FAC.

2.  A declaration, order, and judgment asserting that the Defendant is prohibited from applying Sections 4.2.1; 5-2; 5.6.3 (B), (D), (E); 5.2.1 (A5), (D); 11-40, and 11-42 of its Land Development Regulations, as well as any conditions within CITY's Resolution No. 15-1153, to the Plaintiff's Vegetables and Agronomic Crops cultivated on his agricultural classified land, considering his implementation of BMPs, adopted as Rule 5M-8 under Chapter 120, FAC.

### **II. Injunctive Relief**

3. An injunction prohibiting the Defendant from applying or enforcing Sections 4.2.1; 5-2; 5.6.3 (B), (D), (E); 5.2.1 (A5), (D); 11-40, and 11-42, of its Land Development Regulations or enforcing any of the conditions of Resolution No. 15-1153, to the Plaintiff's agricultural purposes and farm operations.

## III. Damages

4. Award compensatory damages to address the adverse impacts of the Defendant's actions on the Plaintiff's farm property.

5. Award compensatory damages for the Defendant's deprivation of the Plaintiff's right to utilize his farm property, in violation of due process of the law.

6. Award compensatory damages due to the Defendant's infringement upon the Plaintiff's equal protection rights under the law.

7. Award punitive damages to address any egregious conduct on the part of the Defendant.

## IV. Costs and Fees

8. Award court costs and fees.

## V. Other Relief

9. Grant any additional relief deemed just and equitable by the Court.

10. Order any other measures that will rectify the harm caused to the Plaintiff and our waters, and to prevent similar violations in the future.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues raised in this Complaint.

**Respectfully submitted**,

_Benedict A. Mohit_                                    09/01/2023

Benedict Mohit, *Pro Se*,
1520 Sunrise Plaza Drive,
Clermont, Fl. 34714
407-579-8337