# INDEX of EXHIBITS

**Exhibit A**   Polk County Circuit Court Order Dated December 2015     2

**Exhibit B**   Polk County Property Appraiser Classification of
MOHIT's Property as Agricultural Land     5

**Exhibit C**   Florida Department of Agriculture BMPs Rule 5M-8
for MOHIT's Property     7

**Exhibit D**   Best Managements Practices adopted as
Rules under Ch. 120, FAC     8

**Exhibit E**   USEPA Rules for Livestock Operations     13

**Exhibit F**   BMPs Rule 5M-8 Hay Harvesting
at 15 to 18 Inches High     15

**Exhibit G**   Hay Harvesting at 14 to 16 Inches High     17

**Exhibit H**   Challenged CITY's Land Development Regulations     19

**Exhibit I**   MOHIT'S Rezoning Application     22

**Exhibit J**   CITY's Resolution No. 15-1153,
The Conditional Use Permit for MOHIT's Farm     23

**Exhibit K**   Polk County Circuit Court Transcript     27

**Exhibit L**   CITY's Nuisance Citation for MOHIT's Crops     39

**Exhibit M**   25 Heifer Seed Stock Quote     40

**Exhibit N**   CITY's Resolution No. 12-1009,
The Conditional Use Permit for Grullon's Farm     42

**Exhibit O**   Mohit's Apiary Permit     45

**Exhibit P**   Storm Water Management Fees     46

**Exhibit Q**   CITY's Definition of "Development."     48

**Exhibit R**   CITY's Acknowledgement of the Expressed Limitation
of §163.3162 (3), Fla. Sta.     50

## EXHIBIT A – POLK COUNTY CIRCUIT COURT ORDER

INSTR # 2015216877  OR BK 09689  PG 1717  12/03/2015  10:55 AM
STACY M  BUTTERFIELD Clerk of County Court Polk County Recorded By Court

IN THE CIRCUIT COURT IN AND FOR POLK COUNTY, FLORIDA
IN THE TENTH JUDICIAL CIRCUIT

BENEDICT MOHIT [Pro Se], Individually and as
Trustee for Gita Nagassar Mohit Family Trust,

Plaintiff,

vs.                                                           CASE NO. 2014-CA-004014

CITY OF HAINES CITY, a Political Subdivision
of the State of Florida,                                      SECTION: _____

Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
### PLAINTIFF'S FIRST AMENDED COMPLAINT

THIS CAUSE came before the Court on Defendant, City of Haines City's Motion To

Dismiss the Plaintiff's First Amended Complaint. The Plaintiff, BENEDICT MOHIT

("MOHIT"), and Fred Reilly, City Attorney for the Defendant, CITY OF HAINES CITY

("CITY"), and the Defendants, ROY TYLER, JONATHAN EVANS, RICHARD

GREENWOOD, MARK BENNETT, and CLINT ELIASON, were present at the hearing on

October 20, 2015 on this matter.

The Court has reviewed the pleadings, considered arguments of Plaintiff and counsel for the

Defendants, and being otherwise fully advised in the premises finds as follows:

1. That the CITY granted MOHIT's Application for a conditional use permit by approving

Resolution No. 15-1153 on August 6, 2015.

OrderGrantingMotionToDismiss11092015          1

OR BK 09689 PG 1718

2. That August 6, 2015 in a seminal date in this case due to the CITY's approval of Resolution No. 15-1153 on that date, what happened both before and after the August 6, 2015 date, and what was permitted both before and after the August 6, 2015 date.

3. That MOHIT's property is classified as agricultural land pursuant to §193.461 Fla. Stat.

4. That pursuant to Section 823.14 and Section 163.3162, Florida Statutes, local governments do have the right to regulate agricultural activities, but that local governments may not adopt any ordinance, regulation, rule or policy to prohibit, restrict, regulate or otherwise limit an activity of a bona fide farm operation on land classified as agricultural where such activity is regulated through implemented best management practices or interim measures developed by the Department of Environmental Protection, the Department of Agricultural and Consumer Services or water management districts and adopted under Chapter 120 as part of a statewide or regional program.

Accordingly, it is:

**ORDERED AND ADJUDGED** that:

1. ALL COUNTS IN THE PLAINTIFFS' FIRST AMENDED COMPLAINT against ROY TYLER, Defendant, JONATHAN EVANS, Defendant, RICHARD GREENWOOD, Defendant, MARK BENNETT, Defendant, and CLINT ELIASON, Defendant, both individually and in their official capacities, in the instant cause of action, *Mohit v. City of Haines City* (Case No. 2014-CA-004014, Circuit Court, Polk County, Florida), are hereby DISMISSED WITHOUT PREJUDICE because there has been no showing in such FIRST AMENDED COMPLAINT as

OrderGrantingMotionToDismiss11092015          2

OR BK 09689 PG 1719

required by (i) Section 768.28, Florida Statutes, and (ii) 42 U.S. Code Section 1983, as applied to these named individual Defendants.

2. ALL COUNTS IN THE PLAINTIFFS' FIRST AMENDED COMPLAINT against the CITY OF HAINES CITY, Defendant, in the instant cause of action, *Mohit v. City of Haines City* (Case No. 2014-CA-004014, Circuit Court, Polk County, Florida), are hereby DISMISSED WITHOUT PREJUDICE.

3. MOHIT shall have twenty (20) days from the entry of this Order to file an amended complaint in the instant cause of action and that any such amended complaint shall delineate the conduct of the Defendant(s) both before and after the conditional use permit was granted by Resolution No. 15-1153 (which was approved by the CITY on August 6, 2015).

DONE AND ORDERED in Chambers in Bartow, Polk County, Florida this 〽〇 day of _____, 2015.

_____
Mark F. Carpanini, Circuit Judge

Copies furnished to:

Benedict Mohit (Pro Se Plaintiff)
1520 Sunrise Plaza Drive
Clermont, FL 34714

Fred Reilly, City Attorney for Defendant, City of Haines City
Reilly International Law Firm, P.A.
P. O. Box 2039
Haines City, FL 33845
Attorney for the Defendants

OrderGrantingMotionToDismiss11092015          3

# EXHIBIT B - AGRICULTURAL CLASSIFICATION OF MOHIT'S PROPERTY

Skip to main content

Home Page » Return To Search Results

Change Browser Language

| Parcel Details: 27-27-21-749500-011700 | TAX EST | PRT CALC | PRC | HTML PRC | TRIM | HTML TRIM | TAX BILL |
|---|---|---|---|---|---|---|---|

## Owners

NAGASSAR MOHIT GITA FAMILY TRUST          100%

## Mailing Address

| Address 1 | 1520 SUNRISE PLAZA DR |
|---|---|
| Address 2 | |
| Address 3 | CLERMONT FL 34714-6203 |

## Site Address

| Address 1 | 0 20TH ST N |
|---|---|
| Address 2 | |
| City | HAINES CITY |
| State | FL |
| Zip Code | 33844 |

## Parcel Information

| Neighborhood | 130370.00 Show Recent Sales in this Neighborhood |
|---|---|
| Subdivision | FLA DEVELOPMENT CO SUB PB 3 PG 60 TO 63 |
| Property (DOR) Use | Cropland  (Code: 5100) |

| Code | |
|---|---|
| Acreage | 19.60 |
| Taxing District | HAINES CITY/SWFWMD (Code: 90420) |
| Community Redevelopment Area | Haines City CRA II (Code: 46) |

## Property Desc

**DISCLAIMER:** This property description is a condensed version of the original legal description recorded in the public records. It does not include the section, township, range, or the county where the property is located. It is a description of the ownership boundaries only and does not include easements or other interests of record. The property description should not be used when conveying property. The Property Appraiser assumes no responsibility for the consequences of inappropriate uses or interpretations of the property description. No warranties, expressed or implied, are provided for the data herein, its use, or its interpretation.

FLA DEVELOPMENT CO SUB PB 3 PG 60 THRU 63 TRACTS 17 THRU 20 IN NE1/4

## Area Map



## Recorded Plat

Visit the Polk County Clerk of Courts website to view the Recorded Plat for this parcel

Note: Some plats are not yet available on the Clerk's website.  The site contains images of plats recorded on 01/05/1973 (beginning with book 058 Page 020) or later.  For information on Plats recorded before 01/05/1973 (Book 058 Page 019 or less) please contact the Polk County Clerk's Office.

## Mapping Worksheets (plats) for 272721

Mapping Worksheet HTML (opens in new tab)   Mapping Worksheet Printable PDF

## Sales History

## PERMITS

The Polk County Property Appraiser's Office does not issue or maintain permits.  Please contact the appropriate permit issuing agency to obtain information.  This property is located in the **HAINES CITY/SWFWMD**  taxing district. The beginning of the description indicates permit agency (UNINCORP is an abbreviation for Unincorporated **POLK COUNTY**).

### Land Lines

| LN | Land Dscr | Ag/GreenBelt | Land Unit Type | Front | Depth | Units |
|----|-----------|--------------|----------------|-------|-------|-------|
| 1 | * HAY | Y | A | 0 | 0 | 18.30 |
| 2 | * AGRICULTURAL WASTELAND | Y | A | 0 | 0 | 1.30 |

* For Zoning/Future Land Use contact Polk County or the Municipality the parcel is located in.

**NOTICE: All information ABOVE this notice is current (as of Tuesday, March 3, 2020 at 2:17:27 AM).  All information BELOW this notice is from the 2019 Tax Roll, except where otherwise noted.**

### Value Summary (2019)

| Desc | Value |
|------|-------|
| Land Value | $185,640 |
| Building Value | $0 |
| Misc. Items Value | $0 |
| Land Classified Value | $9,434 |
| Just Market Value | $185,640 |
| *Cap Differential and Portability | $0 |
| Agriculture Classification | $176,206 |
| Assessed Value | $9,434 |
| Exempt Value (County) | $0 |
| Taxable Value (County) | $9,434 |

**Important Notice:** If you wish to obtain a copy of a deed for this parcel, click on the blue OR Book/Page number. Doing so will cause you to leave the Property Appraiser's website and access the Polk County Clerk of the Circuit Court's Official Records Search. Once the document opens, click the printer icon to print the document. If you have any issues opening the document once you have met all the listed system requirements, please contact the Clerk's office at (863)534-4000 and ask to speak to an IT staff member. If the Book/Page number does not have a blue link to Official Records, the deed may not be available through the online records of the Clerk of the Circuit Court. In order to obtain a copy of the deed you will need to contact the Clerk of the Circuit Court Indexing Department at 863-534-4516. If the Type Inst is an "R", the document is not available through the Clerk of the Circuit Court's Official Records Search. Please contact the Property Appraiser to order "R" type instruments.

| OR Book/Page | Date | Type Inst | Vacant/ Improved | Grantee | Sales Price |
|--------------|------|-----------|------------------|---------|-------------|
| 08664/01341 | 05/2012 | W | V | NAGASSAR MOHIT GITA FAMILY TRUST | $80,000 |
| 08116/00722 | 04/2010 | CT | V | BRANCH BANKING AND TRUST COMPANY | $100 |
| 5986/2165 | 11/2004 | W | V | WOOD SHIRLEY | $210,000 |
| 2729/0280 | 04/1989 | W | V | | $110,000 |
| 2214/1487 | 02/1984 | W | E | | $100 |
| | 02/1984 | RF | E | | $0 |

### Exemptions

**Note:**  The drop down menus below provide information on the amount of exemption applied to each taxing district. The HX—first $25,000 homestead exemption may be allocated to one or more owners. The HB –second $25,000 amended homestead exemption reflects the name of the first owner only.

| Code | Bld. # | Description | % Ownership | Renew Cd | Year Name | Note | Value |
|------|--------|-------------|-------------|----------|-----------|------|-------|

If you have a Senior Exemption(Additional Homestead Exemption for Persons 65 and Older):  For the 2019 tax year, the allowable total household adjusted gross income received during 2018 could not exceed $30,174.   If your total household adjusted gross income exceeded this limit, YOU MUST NOTIFY THIS OFFICE.  Receiving no notification from the qualified senior will be considered a sworn statement, under penalty of perjury, that the income does not exceed the limit. Improperly claiming any exemption could result in a lien against your property. If you would like to receive a notice of renewal electronically, please send us an email at paoffice@polk-county.net with your name, property address, and confirmation of your request.

## EXHIBIT C – MOHIT'S BEST MANAGEMENT PRACTICES RULE 5M-8

# Office of Agricultural Water Policy (OAWP)

# Best Management Practices Portal

## Notice of Intent Summary

Help with this Page

Notice of Intent Summary      Return to Home Page

Scroll to the Common Practices Status Report (CPSR)

Print Summary Report

Please review the information below carefully. If any of the information needs to be updated, contact Tammy Hinkle at Tammy.Hinkle@FDACS.gov or (850) 815-1245.

| | | | |
|---|---|---|---|
| **Status:** | Active | **County:** | Polk |
| **Status2:** | | **Site Name:** | Mohit Acres; Tihom Acres |
| **NOI Acres:** | 19.60 | **Site Description:** | |
| **Received Date:** | 5/31/2016 | **Address:** | |
| **Assisted By:** | Jessica Stempien | **Address 2:** | |
| **Assigned To:** | Tammy Hinkle | **City, State, Zip:** | |
| **Signed By:** | Benedict Mohit | **Country:** | |
| **Original Signature Date:** | 4/26/2016 | | |
| | | **BMAP Area(s):** | Lake Okeechobee |
| | | **WMD(s):** | Southwest Florida WMD |
| | | **Other Area(s):** | NEEPP |
| | | **Priority Focus Area(s):** | NONE |

Producer Information

| | | | |
|---|---|---|---|
| **Producer:** | Benedict A Mohit | **Phone:** | (407) 579-8337 |
| **Address:** | 1520 Sunrise Plaza Dr | **Fax:** | |
| **City, State Zip:** | Clermont, FL 34714-6203 | **Email:** | dvmohits@gmail.com |

| **Form Name** | **Status** | **Form Signature** |
|---|---|---|
| **Vegetables & Agronomic Crops (2015)** | Active | 4/26/2016 |

Parcel Information

| Parcel Number | Township | Range | Section | Parcel Name | Owner Name | Owner Address | Owner City | Status | Confirm |
|---|---|---|---|---|---|---|---|---|---|
| 272721749500011700 | 27S | 27E | 21 | | NAGASSAR MOHIT GITA FAMILY TRU | 1520 SUNRISE PLAZA DR | CLERMONT | Active | |

## EXHIBIT D

## BEST MANAGEMENT PRACTICES RULES ADOPTED UNDER CHAPTER 120

Department of Agriculture and Consumer Services

## View Individual Chapters

Click on the chapter No. to browse the Rules in the Chapter.

Click on the table header to re-sort the results.

| Chapter No. | Chapter Title |
|---|---|
| 5M-2 | BEST MANAGEMENT PRACTICES (BMPS) FOR INDIAN RIVER AREA CITRUS GROVES |
| 5M-3 | BEST MANAGEMENT PRACTICES FOR AGRICULTURAL OPERATIONS IN THE NORTHERN EVERGLADES |
| 5M-4 | INTERIM MEASURES FOR TRI-COUNTY AGRICULTURAL AREA FARMS |
| 5M-5 | BEST MANAGEMENT PRACTICES (BMPS) FOR THE PEACE RIVER MANASOTA BASIN AREA AND CITRUS GROWN IN OTHER FLATWOODS SOILS |
| 5M-6 | Florida Container Nursery BMP Guide |
| 5M-7 | Best Management Practices for Gulf Citrus |
| 5M-8 | BEST MANAGEMENT PRACTICES (BMPS) FOR FLORIDA VEGETABLE AND AGRONOMIC CROPS |
| 5M-9 | Best Management Practices for Florida Sod |
| 5M-10 | Manure Application in the Caloosahatchee and St. Lucie River Watersheds |
| 5M-11 | Best Management Practices for Florida Cow/Calf Operations |
| 5M-12 | Conservation Plans for Specified Agricultural Operations |
| 5M-13 | Best Management Practices for Florida Specialty Fruit and Nut Crop Operations |
| 5M-14 | Best Management Practices for Florida Equine Operations |
| 5M-15 | Procedures for Binding Determinations of Agricultural Exemptions |
| 5M-16 | Best Management Practices for Florida Citrus |
| 5M-17 | Best Management Practices for Florida Dairies |
| 5M-18 | FLORIDA AGRICULTURE WILDLIFE BEST MANAGEMENT PRACTICES |
| 5M-19 | Best Management Practices for Florida Poultry |

- Copyright @ 2010
- State of Florida Department of State

8



# SILVICULTURE
# Best Management Practices

FLORIDA
FOREST SERVICE

Florida Department of Agriculture and Consumer Services
Adam H. Putnam, Commissioner

Florida Department of State

# FLORIDA ADMINISTRATIVE CODE & FLORIDA ADMINISTRATIVE REGISTER

## Rule Chapter: 5I-6

Chapter Title: BEST MANAGEMENT PRACTICES FOR SILVICULTURE

Add to MyFLRules Favorites

View Chapter: 5I-6

## View Individual Rules

Click on the word icon to view the latest rule version. Or click on the rule number to see the detail of the rule.

| Latest Version | Rule No. | Rule Title | Effective Date |
|---|---|---|---|
| | 5I-6.001 | Purpose (Repealed) | 12/6/2017 |
| | 5I-6.002 | Approved Best Management Practices BMPs | 12/6/2017 |
| | 5I-6.003 | Presumption of Compliance | 12/6/2017 |
| | 5I-6.004 | Notice of Intent to Implement | 12/6/2017 |
| | 5I-6.005 | Record Keeping | 12/6/2017 |
| | 5I-6.006 | Implementation Verification | 12/6/2017 |

Copyright © 2010 State of Florida Department of State
Under Florida law, E-mail addresses are public records. If you do not want your E-mail address released in response to a public records request, do not send electronic mail to this entity. Instead, contact this office by phone or in writing.

# AQUACULTURE BEST MANAGEMENT PRACTICES MANUAL

# November 2016



Florida Department of Agriculture and Consumer Services
Division of Aquaculture
Holland Building, Suite 217
600 South Calhoun Street
Tallahassee, Florida 32399
www.FreshFromFlorida.com



About Us | Contact Us | Help

**Agency Login**

**Florida Department of State**

# FLORIDA ADMINISTRATIVE CODE & FLORIDA ADMINISTRATIVE REGISTER

Home | Advanced Search | MyFLRules | Rules Open for Comments

## Rule Chapter: 5L-3

Chapter Title: AQUACULTURE BEST MANAGEMENT PRACTICES



Add to My FLRules Favorites

View Chapter: 
5L-3

## View Individual Rules

Click on the word icon to view the latest rule version. Or click on the rule number to see the detail of the rule.

| Latest Version | Rule No. | Rule Title | Effective Date |
|---|---|---|---|
| W | 5L-3.001 | Purpose | 10/4/2000 |
| W | 5L-3.002 | Definitions | 10/4/2000 |
| W | 5L-3.003 | Requirement for an Aquaculture Certificate of Registration | 10/4/2000 |
| W | 5L-3.004 | Aquaculture Best Management Practices Manual | 1/9/2017 |
| W | 5L-3.005 | Aquaculture Certificate of Registration | 11/30/2015 |
| W | 5L-3.006 | Minimal Impact Aquaculture Facilities | 11/30/2015 |
| W | 5L-3.007 | Enforcement Actions and Administrative Penalties for Failure to Comply With the Best Management Practices | 11/30/2015 |

Home | Advanced Search | MyFLRules | Rules Open for Comments | About Us   Contact Us | Help

Copyright and Privacy Policies | Accessibility Statement

Copyright © 2000   State of Florida   Department of State

Under Florida law, E-mail addresses are public records. If you do not want your E-mail address released in response to a public records request, do not send electronic mail to this entity. Instead, contact the office by phone or in writing.

# EXHIBIT E – USEPA RULES FOR LIVESTOCK OPERATIONS

United States
Environmental Protection Agency (4203)
Washington, DC 20460

Official Business
Penalty for Private Use $300



# Concentrated Animal Feeding Operations

*Clean Water Act Requirements*

## Will My Operation Be Regulated?



In December 2002, EPA revised the Clean Water Act regulation for Concentrated Animal Feeding Operations, or CAFOs. This pamphlet will help you understand how the revised CAFO regulations might affect your operation.

*Information Series Pamphlet*

## Other Pamphlets in EPA's CAFO Clean Water Act Requirements Information Series

What Are the Federal Requirements for Swine CAFOs?
EPA 833-F-02-007

What Are the Federal Requirements for Chicken and Turkey CAFOs?
EPA 833-F-02-008

What Are the Federal Requirements for Dairy Cow and Heifer CAFOs?
EPA 833-F-02-009

What Are the Federal Requirements for Beef Cattle and Veal Calf CAFOs?
EPA 833-F-02-0010

What Are the Federal Requirements for Horse and Sheep CAFOs?
EPA 833-F-02-0011

What Are the Federal Requirements for Duck CAFOs?
EPA 833-F-02-0012

What Are the Federal Record-Keeping and Reporting Requirements?
EPA 833-F-02-0013

### How do I contact my permitting authority?
Visit www.epa.gov/npdes/statecontacts for contact information on your permitting authority.

### Where can I get copies of these brochures and more information?
Call the Office of Water Resource Center (202) 566-1729 to request copies of these pamphlets and other documents. Call the CAFO Phone Line at (202) 564-0766 with questions or visit the following EPA or USDA web sites.

**EPA:**
www.epa.gov/npdes/cafo/rule
www.epa.gov/agriculture

**USDA:**
www.usda.gov

Photos courtesy of USDA, Woodland Farm Inc., and USEPA OECA

**EPA 833-F-02-006**
December 2002

13

NATURAL RESOURCES CONSERVATION SERVICE
CONSERVATION PRACTICE STANDARD

# COVER CROP

(Ac.)

CODE 340

## DEFINITION

Grasses, legumes, and forbs planted for seasonal vegetative cover.

## PURPOSE

This practice is applied to support one or more of the following purposes:

- Reduce erosion from wind and water.
- Maintain or increase soil health and organic matter content.
- Reduce water quality degradation by utilizing excessive soil nutrients.
- Suppress excessive weed pressures and break pest cycles.
- Improve soil moisture use efficiency.
- Minimize soil compaction.

## CONDITIONS WHERE PRACTICE APPLIES

All lands requiring seasonal vegetative cover for natural resource protection or improvement.

## CRITERIA

### General Criteria Applicable to All Purposes

Plant species, seedbed preparation, seeding rates, seeding dates, seeding depths, fertility requirements, and planting methods will be consistent with applicable local criteria and soil/site conditions.

Select species that are compatible with other components of the cropping system.

Ensure herbicides used with crops are compatible with cover crop selections and purpose(s).

Cover crops may be established between successive production crops, or companion-planted or relay-planted into production crops. Select species and planting dates that will not compete with the production crop yield or harvest.

Do not burn cover crop residue.

Determine the method and timing of termination to meet the grower's objective and the current NRCS Cover Crop Termination Guidelines.

When a cover crop will be grazed or hayed ensure the planned management will not compromise the selected conservation purpose(s).

Do not harvest cover crops for seed.

If the specific rhizobium bacteria for the selected legume are not present in the soil, treat the seed with the appropriate inoculum at the time of planting.

### Additional Criteria to Reduce Erosion from Wind and Water

Time the cover crop establishment in conjunction with other practices to adequately protect the soil during the critical erosion period(s).

Select cover crops that will have the physical characteristics necessary to provide adequate erosion protection.

Use the current erosion prediction technology to determine the amount of surface and/or canopy cover needed from the cover crop to achieve the erosion objective.

### Additional Criteria to Maintain or Increase Soil Health and Organic Matter Content

Cover crop species will be selected on the basis of producing higher volumes of organic material and root mass to maintain or increase soil

Conservation practice standards are reviewed periodically and updated if needed. To obtain the current version of this standard, contact your Natural Resources Conservation Service State Office or visit the Field Office Technical Guide.

NRCS, NHCP
September 2014

**EXHIBIT F – HAY HARVESTING AT 15 TO 18 INCHES HIGH**



## Table 4. Recommended Stages to Harvest Hay Crops

| Plant | Time of Harvest |
|---|---|
| Alfalfa | Bud stage for first cutting, one-tenth bloom for later cuttings |
| Bahiagrass | 10 to 12-inch height |
| Bermudagrass | 15 to 18-inch height |
| Clovers | Early bloom |
| Oats, Barley, Wheat | Boot to early head stage |
| Perennial Peanut | 12 to 14-inch height |
| Soybean or Cowpea | Mid to full bloom |
| Sorghum-Sudangrass | 30 to 40-inch height |
| Hermathria | Between 4 and 6 weeks |

The amount of fertilizer to apply will depend on how the forage is used. To achieve the potential production used in a typical hay system (5 to 8 tons/acre), the required amounts of nutrients cannot be supplied by the soil alone. This is especially true with multiple cuttings. If the production system includes a mix of legumes that fix N, there will be some contribution of N but usually no more than about 30 to 40 lbs N/acre. Producers should follow the fertilization recommendations in *Nutrient Management of Vegetable and Agronomic Row Crops Handbook* at: http://edis.ifas.ufl.edu/ss639.

### Special Water Quality Considerations

Due to their high yield and tissue nutrient concentration, forages can reduce excess soil nutrients (such as N or P) when they are harvested for hay, silage, or used as greenchop. Given their extensive root systems, forages not only efficiently extract nutrients, but also minimize soil compaction and erosion by water and wind.

Sometimes, irrigation of forage crops is used to manage wastewater from dairy operations or municipal water treatment facilities. Under either of these scenarios, multiple cropping systems should be used to maximize the removal of residual soil nutrients. Also, careful nutrient management planning is needed to ensure that crops are fertilized at the proper agronomic rate.

### Irrigation Management

Irrigation of forage crops grown for hay or silage is common, due to sandy soils, uneven distribution of rainfall, and multiple yearly harvests. In Florida,

there are approximately 196,000 acres of silage and hay crops under irrigation. The irrigation systems most commonly used are center-pivot and lateral-move equipment, which are permanent self-propelled systems. Portable and large traveling-gun systems are sometimes used.

Average water use for bermudagrass irrigation ranges from 0.12 inches to: 0.16 inches/day in March; 0.18 inches/day in May, June, and July; 0.16 inches/day in August; and 0.14 inches/day in September. Producers should educate themselves on their particular forage crop's water use requirement to ensure that the proper amount of water is applied during each irrigation event.

### Harvesting and Storage

Certain forages are harvested, stored, and later fed to livestock as silage. Crops such as corn and sorghum are particularly well-suited to harvesting as silage because of their high energy value and the fact that their thick stalks delay drying. Once harvested, silage is stored in a silo (absence of air, low pH) and preserved by naturally occurring acids until it is used as feed.

Bermudagrass and bahiagrass are usually harvested as hay and, in North Florida, may be cut and harvested up to four times per year. Hay baled at too high a moisture level will generate excessive heat and can even catch on fire. Further, hay stored outside for a prolonged period of time may result in leaf shatter, dry matter loss, and reduced forage quality due to rain. To offset this effect, hay bales should be stored under roof as in Figure 18, or, if stored outside, oriented in north-south rows to get more exposure to sunlight.

Major losses in forage quality generally occur due to poor storage and feeding techniques. Ultimately, a reduction in quality increases the level of animal refusal during feeding, and will require additional feed supplementation to offset the animal's nutritional requirements. For more information about silage management, go to: https://www.pioneer.com/home/site/us/livestock-feed-nutrition/.

Accurate laboratory testing of feed and forage will provide the information needed to formulate animal feeding rations; and provides a basis for commercial hay sales. For more information about forage quality, sample collection and laboratory analysis, see the publication, *Understanding and Improving Forage Quality* at:

http://extension.uga.edu/publications/files/pdf/B%201425_1.pdf.

## EXHIBIT G – HAY HARVESTING AT 14 TO 16 INCHES HIGH



UNIVERSITY OF
**FLORIDA**

E X T E N S I O N

Institute of Food and Agricultural Sciences

SS-AGR-60

# Bermudagrass Production in Florida [1]

C. G. Chambliss and F. A. Johnson[2]

The improved hybrid bermudagrasses (*Cynodon dactylon L.*) are used for both hay and grazing. Coastal was the first hybrid bermudagrass developed at the Coastal Plain Experiment Station in Tifton, Georgia, and was released in 1943. Several other bermudagrass varieties have been developed since then by both public agencies and private individuals. Hybrid bermudagrasses have been popular for hay production because they are very responsive to nitrogen fertilizer, have high yield potential, and usually dry or cure faster than most other forages that could be used for hay. Bermuda makes good use of animal manures and so has been widely used by the poultry and dairy industries. Overseeding of winter forages has generally been more successful on bermudagrasses than on bahiagrasses. Many research studies have shown high animal weight gains per acre when bermuda is well fertilized.

## BERMUDAGRASS VARIETIES

The following is a list of varieties that can be used in Florida: Coastal, Suwannee, Coastcross-1, Callie, Alicia, Tifton 44, Tifton 78, Tifton 85, and Florakirk. Stargrasses are closely related to the bermudagrasses, and several varieties are available. The newer varieties were developed primarily for increased yield and quality.

**Coastal** was the first improved forage bermudagrass. It has proven to be well adapted in north Florida and has performed well for many years.

**Suwannee** was released in 1953 and is similar to Coastal but will out-yield Coastal when grown on the very drought susceptible deep sands.

**Coastcross-1** was released in 1967. It is much more digestible than Coastal, but has less cold tolerance. It may be subject to winter-killing in severe winters. It spreads rapidly by above ground stolons, and develops few, if any, rhizomes. It is now grown only in the warmer areas of peninsular Florida for hay production.

**Callie** is more digestible and higher yielding than Coastal but is susceptible to rust disease which may become severe if the grass is not harvested on a 4 to 5-week schedule. Callie produces few rhizomes, and therefore it is suggested that it is best established by planting the green tops instead of sprigs.

17

spring. After each cutting, except the last in the fall, apply an additional 80 lb N, and 40 lb $K_2O$/a, along with 20 lb $P_2O_5$/A if the soil tested low or medium in P. For grazing apply 80 pounds of nitrogen per acre and soil test recommended amounts of P & K. An additional 80 pounds of N can be applied mid-season if needed. Sulfur is not recommended and in most situations a growth response to sulfur would not be expected. As insurance against a potential sulfur deficiency, some producers are applying part of their nitrogen as ammonium sulfate, but a premium should not be paid for this source of nitrogen, relative to that of other nitrogen sources, simply for the insurance against a potential sulfur deficiency. If manure is used as a fertilizer, it will supply sulfur. The need for routine use of micronutrients has not been demonstrated.

When using manure, if possible, determine the nutrient content of the manure being used and then apply the manure in amounts needed to supply the N, P, K nutrient recommendations. Additional N, P or K may be needed to supplement the manure.

With the use of high nitrogen rates, pH will decrease over time. Ammonium sulfate lowers pH faster than other sources of nitrogen. Use annual soil testing to follow the decrease in pH and to determine P and K levels. A good time to take soil samples is in the fall after the last hay harvest. Be especially careful not to fall behind in potassium application. Low potassium levels have resulted in thinning of stands.

Bermudagrass is especially responsive to nitrogen. Table 1 presents estimates of crude protein and dry matter yield (3-5% moisture hay) for increasing amounts of nitrogen applied. Estimates of nitrogen removal in the harvested crop are also given.

## HAY MANAGEMENT

The first hay harvest should be made when there is enough forage to justify equipment use. At this time the grass may be 14 to 16 inches high.

Try to take the first harvest before summer rains start. Be ready to take each successive harvest at four weeks of regrowth. If the weather does not allow harvest at four weeks, harvest at five or six weeks

Maximum yield is usually obtained with a six week schedule. However, waiting until six weeks to harvest may result in further delays due to rain. If harvest is delayed beyond six weeks, quality (digestibility and protein) decreases rapidly. The effect of cutting interval on hay quality is shown in Table 2 and Table 3 .

Animal intake is higher and gain per animal is greater with bermudagrass that is four weeks old when harvested. Cutting interval, or age of forage when harvested, affects both digestibility and protein level. Both decrease as cutting interval increases. High rates of nitrogen fertilizer will tend to raise the protein level. Make every effort to avoid rain when cutting, drying and baling the hay. If the hay is rained on, use a tedder after the rain to help speed drying. A heavy rain will leach some soluble sugars out of the leaves, thus reducing the quality of the hay to some extent. A greater problem may be the growth of molds and other rotting organisms if the rain continues for several days or if the grass is baled too wet.

Hay producers can use an electronic moisture tester to determine when the grass is dry enough to bale. The moisture content should be at 15% or lower before baling in order to prevent the growth of molds and heating. Bales that are too wet can present a fire hazard through spontaneous combustion. Some producers have used hay preservatives (organic acids) that inhibit the growth of molds. This allows them to bale at moisture levels up to about 22%. The preservative is applied to the grass as it enters the bale chamber.

When frequent rainfall does not permit drying and conserving the grass as hay, roll bale silage may be an alternative to consider. The roll bale silage system uses a conventional large round baler to roll up wet grass (55-65% moisture). The bale is then wrapped in stretch plastic to exclude oxygen. This requires a special machine to apply the plastic wrap. Because of extra expense, the roll bale silage system should only be used to conserve young high quality grass and only when the weather is too wet to make hay.

## EXHIBIT H - CHALLENGED CITY'S LAND DEVELOPMENT REGULATIONS

2/8/2017                                  Haines City, FL Land Development Regulations          Exhibit A

Sec. 5.6.3. - R-2 single family residential.

A. *Statement of intent.* This district is intended to include low to medium density single family residential uses, with emphasis on residential uses utilizing a smaller minimum house size than the R-1 single family residential districts. The R-2 zone is reserved for the existing urban core areas and limited existing urban infill areas.

B. *Permitted principal uses and structures.*

1. Single family detached dwellings.

   The roofs of new single family residential structures visible from the street and public areas should relate in shape and pitch to the roofs of adjacent single family dwellings. Further, flat roof areas that are less than 5:12 pitch (rise to run) shall only be permitted on new single family structures within the R-2 residential district, provided they do not exceed 15 percent of the total horizontal ground surface area covered by the roof, including but not limited to all living areas, porches, patios, garages, carports, entrances, and exterior balconies. The maximum permitted pitch shall be limited to 14:12 (rise to run). Flat roof areas may be increased to 20 percent, if at least five percent is utilized as a deck, porch or usable outdoor space.

2. Public recreational facilities owned or lease by the city, county or state and public buildings and uses in keeping with the character and requirements of the district.

3. Public or non public academic preschool through high school and post secondary collegiate institutions.

4. Churches, or houses of worship.

5. Existing cemeteries, or places of interment.

6. Existing duplexes, triplexes and multi-family structures developed, or permitted for construction prior to September 16, 1999.

C. *Permitted accessory uses and structures.* Uses and structures which:

1. Are customarily accessory and clearly incidental and subordinate to permitted or permissible uses and structures.

2. Do not involve the conduct of business on the premises.

3. Are located on the same lot as the permitted or permissible principal use or structure, or on a contiguous lot in the same ownership.

4. Are not of nature likely to attract visitors in larger numbers than would normally be expected in a residential neighborhood.

5. Permitted accessory uses and structures in this district shall be of a type that does not involve operations or structures not in keeping with the character of a low to medium density general residential neighborhood.

6. Non commercial greenhouses, tool and garden sheds, children's play areas and play equipment, boat houses, and docks, provided that such structures do not exceed 600 square feet in area.

19

7. Swimming pools and pool enclosures.

8. Home occupations, subject to the conditions of 5.2.12.

9. Retail is permitted as an accessory use as part of a public park or public or semi-public golf course. Examples of these accessory uses may include pro shops, restaurants/concession stands and other similar uses.

D. *Prohibited uses and structures.*

1. Trade or service establishments or storage in connection with such establishments, outdoor storage or long-term outdoor parking of commercial, industrial or passenger motor vehicles, storage of building materials (except in connection with active construction activities on the premises), outdoor storage or use of manufactured homes, recreational vehicles or trailers except as specifically permitted in section 6.3.1. of the LDR, signs except as specifically permitted herein or permissible as an exception.

2. No on site sign of either a permanent or temporary nature shall be permitted within this zoning district which would serve to advertise a home occupation.

3. Bed and breakfast.

4. Any use of structure not specifically or provisionally permitted by this section shall be considered prohibited.

E. *Conditional use.* Permissible by the city commission after public hearing and subject to appropriate conditions and safeguards. The city commission may approve, deny or add additional conditions for all conditional use requests. (See section 19.2.4. of the LDR.)

1. Agricultural uses.

   a. Citrus (but not packing houses or similar activities).

   b. Horticulture.

   c. Forestry (but not lumberyards, processing areas, or similar facilities).

   d. Grazing, pasture and growing of hay.

   e. Limited housing of animals, provided no building for the housing of animals shall be located within 200 feet of any residentially zoned property. Such limitations shall be defined through the conditional use process.

   f. A minimum of five acres is required.

2. Flag lots. After satisfying the following criteria, a request may be made to the board of adjustment to permit flag lots in the R-2 zoning district:

   a. The parcel of land being developed is an odd shape. (E.g. nonrectangular or nonsquare.)

   b. The stem of the flag lot must be a minimum of 1,000 feet from any other flag lot (proposed or existing).

   c. The proposed development shall not include more than one flag lot for every ten lots being concurrently platted.

Sec. 5-2. - Unlawful to keep designated fowl, animals and reptiles within city.

It shall be unlawful for any person to keep or cause to be kept or to have in his possession or under his custody or control within one hundred (100) yards of any neighboring house, abode, or habitation, within the city limits, any chickens, ducks, guineas, quail, pigeon, partridge or pheasant or the like; and it shall be unlawful for any person to keep or cause to be kept or have in his possession, or under his custody and control, any pig, goat, sheep, horse, cow, cattle, or any tamed or captive wild animal or reptile within the city limits; provided, any person maintaining any such animals or fowl prior to September 7, 1961, shall be permitted to continue to keep the same animals or fowls only so long as they shall maintain the same in an enclosure and in such a manner as not to become a nuisance.

(Code 1962, § 5-1)

# EXHIBIT I – MOHIT'S REZONING PERMIT APPLICATION

*[handwritten]* ~~Note: this requirement ~~ for ~~ ... ~~ ... company is ~~ or ~~ ~~ angers violate the~~
"Florida Right to Farm Act" PL 823-14

② Property has been classified as "Agricultural Use" for more than (2) two years
and continues Agricultural use

HAINES CITY

APPLICATION FOR CITY COMMISSION ACTION *for many years!!*

### FOR OFFICE USE ONLY

APPLICATION NO. _____    DATE _____

FEE PAID _____    RECEIPT NO _____
DATE OF HEARING ADVERTISED _____
DATE SET FOR PUBLIC HEARING _____
THE OWNER OR THE AGENT HAS _____ HAS NOT _____ SUBMITTED A
PETITION REGARDING THE SUBJECT PROPERTY WITHIN THE LAST YEAR

I (WE) _Gita & Benedict Mohit_ OF _1520 Sunrise Plaza Dr. Clermont, FL 34714_
Name of Owner or Authorized Representative    Mailing Address

REQUEST THE CITY COMMISSION OF THE CITY OF HAINES CITY
GRANT THE FOLLOWING REQUEST:

_____ A CONDITIONAL USE    _____ OTHER (EXPLAIN)

THE DESCRIPTION OF THE SUBJECT PROPERTY IS AS FOLLOWS

IT IS LOCATED AT _1911 20th Street Haines City_
Street Number or Name

THE LEGAL DESCRIPTION IS AS FOLLOWS:
BLOCK _____ LOT: _____ SUBDIVISION OF PLAT _____
OR (IF OTHERWISE LEGALLY DESCRIBED) _Tax I.D. 212727-749500-011700_
_Parcel I D. 272721 1000 11700_

PLEASE ATTACH COPY OF DEED.

PROPERTY SIZE _20 Acres_    PRESENT ZONING CLASS _R-2_
Acres/Square Feet

PRESENT USE _Agricultural - Hay Production and Horses_

PRESENT STRUCTURES (TYPE AND IMPROVEMENTS UPON THE LAND)

THE PROPOSED USE WILL BE _"Agricultural Use" including crops & hay;_
_livestock & companion animals; associated buildings; water well & fences;_
_with a requirement of 50 (fifty) feet set back from property lines for buildings._
ATTACH IMPACT ~~ASSESSMENT IF REQUIRED~~    YES _____ NO ✓ N/A _____
_Truck crops; Timber; Horticulture._
_Plant Nursery._

APPLICATION FOR CONDITIONAL USE AND OTHER    Page 1 of 2

_Estimated number of Animals Cattle: (20) twenty on rotational basis_
_Goats (20) twenty_
_Horses (5) five_

_Excluding swine; feed lot operation;_

# EXHIBIT J - CITY'S RESOLUTION NO. 15-1153

### RESOLUTION NO. 15-1153

**A RESOLUTION OF THE CITY OF HAINES CITY, FLORIDA; GRANTING A CONDITIONAL USE TO PERMIT AGRICULTURAL USES IN A R-2 (RESIDENTIAL) ZONE, LOCATED EAST OF 20TH STREET NORTH AND MCKEOWN STREET EAST, HAINES CITY, FLORIDA; SETTING FORTH CONDITIONS; PROVIDING FINDINGS; PROVIDING FOR RECORDING IN THE PUBLIC RECORDS; PROVIDING FOR A TERM; PROVIDING AN EFFECTIVE DATE.**

**WHEREAS,** Section 193.461(3)(b), Florida Statutes, defines "bona fide agricultural

purposes" as "good faith commercial agricultural use of the land;" and

**WHEREAS,** Sections 20.2.1 (Authority; intent) and 20.2.2 (Procedure) of the City's

Land Development Regulations govern the City Commission's consideration of the a

Conditional Use Permit application; and

**WHEREAS,** an application for a Conditional Use Permit was submitted on May 11,

2015 ("Application"), a copy of which is attached hereto as Exhibit A; and

**WHEREAS,** the Application seeks a conditional use permit to allow the twenty (20) acre

real property, which has an R-2 Zoning Classification, to be used for bona fide agricultural

purposes; and

**WHEREAS,** the Application states that the Proposed Use will be:

"Agricultural use" including crops and hay; livestock & companion animals,

amoisated buildings, water well & fences; with a maximum of 50 (fifty) feet

setback from property lines for buildings. Truck crops; Timber; Horticulture,

Plant Nursery. Estimated number of Animals: Cattle: 20 (twenty) on rotational

basis, Goats: 20 (twenty), Horses: 5 (five) Excluding swine; feed lot operations;"

**WHEREAS,** it is in the best interests of the residents and citizens of the City of Haines

City, Florida, for the City Commission to grant a Conditional Use Permit to allow the real

Page 1 of 4

23

property described in the Application, which has an R-2 Zoning Classification, to be used for bona fide agricultural purposes.

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF HAINES CITY, FLORIDA, AS FOLLOWS:**

**Section 1.   Incorporation of Recitals.** The above recitals are true and correct and are adopted herein by reference.

**Section 2.   Conditional Use Granted.** The conditional use application for the following described parcels located within the City of Haines City more particularly described as:

FLA DEVELOPMENT CO SUB PB 3 PG 60 THRU 63 TRACTS 17 THRU 20 IN

NE1/4 (Parcel ID No. 27-27-21-749500-011700).

is hereby granted to allow the real property, which has an R-2 Zoning Classification, to be used for bona fide agricultural purposes.

**Section 2.   Conditions of Approval.**

1.    Approval of this conditional use does not release the applicant from meeting the requirements of all other applicable sections of the City of Haines City's Land Development Regulations (including Section 20.2.2.D, regarding Conditional Uses), Code of Ordinances, Growth Management Plan, and Florida Statutes.

2.    The owner may locate nonresidential farm buildings, farm fences, and farm signs on the real property in accordance with Section 604.40, Florida Statutes.

3.    The maximum number of animals that may be maintained on the real property are as follows:

Cattle: twenty (20) on a rotational basis.

Goats: twenty (20).

Page 2 of 4

Horses: five (5).

4.   The owner is prohibited from maintaining swine or feed lot operations on the real property.

5.   The applicant shall be required to reapply in ten (10) years. This Resolution will expire on August 6, 2025.

**Section 3.  Findings.**  In adopting this Resolution, the City Commission hereby makes the following findings, purposes, and intent:

1.   The City Commission is empowered under Article 2 of Chapter 20 of the City's Land Development Regulations to hear and decide applications for conditional uses, to decide questions involved in determining whether conditional uses should be granted, and to grant conditional uses with conditions and safeguards appropriate under the Land Development Regulations, and are generally compatible with adjacent properties and other properties in the district.

2.   A written application for conditional use was submitted to the City's Community Development Department via the City Manager on May 11, 2015.  The Application was submitted pursuant to the chapter and section of the Land Development Regulations under which the conditional use is sought (Sections 20.2.1 and 20.2.2) and the Application states the ground on which it is requested.

3.   Based on the evidence in the record, it is hereby found that the proposed conditional use will not adversely affect the public interest and is not contrary to the intent and provisions of the City's Growth Management Plan.

4.   The City has complied with the public hearing and notice requirements set forth in Article 2 of Chapter 20 of the Land Development Regulations.

Page 3 of 4

25

**Section 4.**     **Term.**     This conditional use permit shall commence on the date of approval by the City Commission.

**Section 5.**     **Effective Date.**  This Resolution shall take effect immediately upon its adoption.


**PASSED and APPROVED** in regular session of the City Commission of the City of Haines City, Florida, this 6th day of August, 2015.

ATTEST:

Linda Bourgeois, City Clerk

APPROVED:

Kenneth Kipp, Mayor-Commissioner

**APPROVED AS TO FORM AND CORRECTNESS:**

Fred Reilly, City Attorney

Page 4 of 4

# EXHIBIT K – POLK COUNTY CIRCUIT COURT TRANSCRIPT

Filing # 38062765 E-Filed 02/19/2016 10:36:12 PM

```
              IN THE CIRCUIT COURT OF THE

            TENTH JUDICIAL CIRCUIT OF THE

       STATE OF FLORIDA IN AND FOR POLK COUNTY

BENEDICT MOHIT (Pro Se),
Trustee for Gita Nagassar Mohit
Family Trust,

         Plaintiff,

     vs.                  CASE NO. 2014-CA-004014

CITY OF HAINES CITY, a Political Subdivision,
of the State of Florida,

         Defendant.
_____/



          HEARING HELD ON OCTOBER 20, 2015

     BEFORE THE HONORABLE MARK F. CARPANINI
```

**McGill & Associates Professional Reporting Services, Inc.**
**Bartow, Florida  863-533-4642**

2014CA-004014-0000-00        Received in Polk 02/19/2016 10:37 PM

5

1   specifically includes the finding that, quote,

2   this -- that Mohit should submit a new application

3   to the City for a conditional use permit to pursue

4   livestock farming on his existing farm.

5       The third point is that the city commission

6   acted in good faith and consistent with the Court's

7   orders in considering and then unanimously

8   approving the resolution on August 6th, 2015, which

9   granted the application that Mohit had actually

10  submitted.

11      THE COURT:   August 6th or August 7th?

12      MR. REILLY:   August 6th.

13      THE COURT:   Okay.   It says in your motion

14  August 7th, but -- oh, no, you sent him a certified

15  copy, okay, probably the next day.

16      Okay.  Go ahead.

17      MR. REILLY:   The fourth point is Mohit

18  received due process with respect to the City's

19  consideration of the resolution, but Mohit chose

20  not to participate in the conditional use process

21  other than resubmitting the application.

22      And finally, Mohit did not timely appeal the

23  resolution within the 30-day appeal period and,

24  thus, the resolution, which constitutes the City's

25  zoning approval, is final, and Mohit's real

9

1          Plaintiff Mohit allege that the City's
2     ordinances violate Florida statutes.  And it seems
3     to me, Your Honor, the Court has not made a
4     decision as to whether that ordinance is valid or
5     whether the statutes preempt the ordinance.

6          THE COURT:  Dr. Mohit, let me ask you a
7     question about that.  And I believe this was raised
8     in the City's motion to dismiss.

9          The statute does not blanketly prohibit the
10    City from regulating agricultural uses, and the
11    statutes mirror each other as to the exception.
12    But the exception -- and I'm just paraphrasing
13    it -- is they may not regulate if the activities
14    are the subject of adopted best management
15    practices or are other -- otherwise regulated by, I
16    believe, it's the Florida Department of
17    Environmental Protection or the water management
18    agencies.  Isn't that not what the statute says?

19         DR. MOHIT:  Yes, Your Honor, I think so.

20         THE COURT:  Okay.  So doesn't that, on the
21    face of the statute, give the City the ability, or
22    a county for that matter, the ability to regulate
23    agricultural activities unless they are the subject
24    of a best management practice or are otherwise
25    addressed by a water management district or the --

10

1    or -- the water management district or the Florida
2    Department of Environmental Protection.
3         In other words, I believe the statute, and I
4    believe I've read this in several places, is -- is
5    making -- the legislature was making a point that,
6    look, we're not going to subject agricultural
7    activities to duplicative regulation if they are
8    regulated by the state in the context of the water
9    management district or the Department of
10   Environmental Protection or the subject of best
11   management practices, then the city and the county
12   doesn't have anything to do with that.  Can't
13   regulate it.
14        But the necessary implication there, just on
15   the face of the statute, is that if they're not,
16   they can.  So what's your response to that?  And, I
17   believe, that's raised in the City's --
18            MR. REILLY:  Yes, Your Honor.
19            THE COURT:  -- motion.
20            MR. REILLY:  It is.
21            DR. MOHIT:  Well, Your Honor, it's obvious I
22   don't agree with that at all because that's not
23   what --
24            THE COURT:  Well, then what -- what
25   interpretation do you give to those words that are

12

1       THE COURT:  By the way, this ordinance was
2    adopted and this was a post --
3       DR. MOHIT:  Ordinance was adopted July 5th,
4    2012.  I started agriculture --
5       THE COURT:  Substantially after that,
6    June 16th, 2000 deadline, correct?
7       MR. REILLY:  Yes, sir.
8       THE COURT:  All right.  So you concede you are
9    subject to the statute.  The regulations are
10    subject to the statute.  I mean, there was a case
11    which held that if they were adopted prior to the
12    statute --
13       MR. REILLY:  Yes, sir.
14       THE COURT:  -- it didn't apply, but that's not
15    the situation here.
16       MR. REILLY:  No.
17       DR. MOHIT:  And, Your Honor, that case has
18    been reviewed because that case that you refer
19    to --
20       THE COURT:  Well, that case is just simply
21    inapplicable to this situation because the City
22    concedes that their ordinances were adopted after
23    2000.
24       DR. MOHIT:  Okay.  So, Your Honor, the
25    whole --

15

```
 1          DR. MOHIT:  According to the Department of
 2     Agriculture and Consumer Services.
 3          THE COURT:  Okay.  Okay.  Are they before --
 4     are those practices before the Court right now?  I
 5     mean, do I have a copy of them anywhere?
 6          DR. MOHIT:  No, Your Honor.
 7          THE COURT:  Okay.  Which is part of my problem
 8     with this case.
 9          DR. MOHIT:  Because if I meet the requirements
10     of 193.461, which is if the land, according to the
11     property appraiser, pursued bona fide agriculture,
12     it complies, by deduction, with the statutes for
13     best management practices.
14          THE COURT:  Okay.  Where's my -- where's my
15     proof of that?  Where's the allegation of that in
16     the complaint?  It's not alleged in the complaint.
17          You're telling me that, but it's not within
18     the four corners of the complaint.
19          DR. MOHIT:  Okay.
20          THE COURT:  And what you're saying may be
21     true, I don't doubt it, but it's not before me.
22          It seems to be a giant problem with this case
23     where you're telling me -- where you're telling the
24     Court, the plaintiff is telling the Court, the City
25     may not regulate at all, right?  But that's not
```

McGill & Associates Professional Reporting Services, Inc.
Bartow, Florida  863-533-4642

.

2014CA-004014-0000-00        Received in Polk 02/19/2016 10:37 PM

16

1 what the statute says.  What the statute says is

2 the City may not regulate if this condition

3 prevails.  This condition being the exception in

4 the statute, right?  That's what the statute says

5 on its face.

6  But there's no allegation in the complaint

7 that what agricultural activity that you're

8 proposing is addressed by a best management

9 practice, as you say, adopted by the Department of

10 Environmental -- adopted by the Department of

11 Agriculture, or complies with the rules of the

12 water management district, or complies with the

13 Department of Environmental Protection.  After all,

14 the goal here is to avoid a duplication of

15 regulation.

16  DR. MOHIT:  Okay, Your Honor.  Let me refer

17 you to the case, Pasco County versus Tampa Farm

18 Services.  This case says, in accordance with the

19 Statute 823.14 Florida statute, Tampa Farm is free

20 to change their farm product from chicken to

21 strawberries without fear of a lawsuit to abate

22 these activities.

23  THE COURT:  Okay.  Now, let me stop you right

24 there.

25  That lawsuit to abate its activities would be

McGill & Associates Professional Reporting Services, Inc.
Bartow, Florida  863-533-4642

2014CA-004014-0000-00  Received in Polk 02/19/2016 10:37 PM

27

1     the other one that he refers to.  I think the name

2     is Grulon.  Okay?

3          And I'm the one that wrote the resolution.

4     And what I attempted to do was include as many

5     provisions that were, one, consistent with the

6     City's code of ordinances; and, two, would take

7     away issues so that there would not be a conflict

8     on something like the fence, for instance.  That's

9     why that language was specifically put in the

10    resolution.

11         THE COURT:  Well, Mr. Reilly, related to that,

12    what safeguards, if any, are in the City's

13    ordinances which will accommodate 604.50 and

14    163.3162 in the sense that if someone applies for

15    something that is otherwise the subject of a best

16    management practice or regulated by FDEP or the

17    water management district, you look at that

18    application and say what they want to do, we don't

19    have any business regulating?

20         Do you understand my question?

21         MR. REILLY:  Well, I'll give you a two-part

22    answer.  The -- Dr. Mohit had an initial discussion

23    with the staff.  And to be candid with the Court,

24    I'm not 1,000 percent sure the staff was up to date

25    on the status of some of the statutes and what they

28

1        meant.  And I'm -- you know, I will admit that.

2              THE COURT:  I'm pretty much 1,000 percent sure

3        they weren't.

4              MR. REILLY:  Yes, sir.

5              The second part, though, is in --

6              THE COURT:  I say that without knowing for

7        sure.

8              MR. REILLY:  I understand.

9              -- in preparing this case, one of the things I

10       did -- and I'm only trying to inform the Court what

11       I was trying to do to see what was relevant -- I

12       spoke with one of the staff attorneys at the

13       Department of Agriculture, and we discussed this at

14       length, these two conditions that have a two-prong

15       legal standard, and the second prong being the

16       regulated by DEP or water management district.  And

17       my understanding --

18             THE COURT:  Or the subject of a BMP.

19             MR. REILLY:  Yes, sir.

20             -- my understanding from that discussion is

21       that those relate to rules that are in the Florida

22       Administrative Code.

23             THE COURT:  He does refer to Chapter 120 in

24       the statute.

25             Now, has that -- have those exceptions been

29

1        folded into your regulations or --

2            MR. REILLY:  To be candid with the Court, I

3        think there are certainly some places in our code

4        that need to be revised.

5            But I will say in response to Dr. Mohit's

6        case, we -- we have bent over backwards to try and

7        find a way to allow him to do what he asked to do,

8        and that's why we went through the process of the

9        conditional use permit application.

10           THE COURT:  Okay.  Go ahead, Dr. Mohit.

11           DR. MOHIT:  Well, I'll respond.  They did not

12       bend over backwards.  They limit cattle to 20.  How

13       am I going to keep 20 cattle to make a profit?

14           If I build a barn, in 10 years I go to reapply

15       for a permit.  A barn lasts 50 years.  If I plant

16       timber, the permit expires in 10 years, so --

17           THE COURT:  Okay.  No, I don't -- if I

18       understand what the resolution is, you do not have

19       to apply for a permit in connection with a barn.

20           Am I correct, Mr. Reilly?

21           MR. REILLY:  Yes, sir.

22           DR. MOHIT:  I don't have to apply for a barn,

23       but I have to apply for a new permit in 10 years.

24           THE COURT:  No.

25           DR. MOHIT:  Yes.

30

1          THE COURT:  I just asked him that question and
2      he said --
3          MR. REILLY:  With respect to the farm
4      buildings and the signs and the fence, those are
5      covered by 604.50.
6          THE COURT:  And no permit is required.
7          MR. REILLY:  No, sir.  No permit required.
8          DR. MOHIT:  Your Honor, the ag permit, the
9      conditional use permit is only valid for 10 years.
10          So in 10 years, no agriculture can be
11      practiced on my land.  Ten years from August 8th --
12      the resolution is dated --
13          THE COURT:  All right.  Let me ask Mr. Reilly
14      what -- what is the effect of having it for 10
15      years?  What is the goal --
16          MR. REILLY:  Well --
17          THE COURT:  -- or aim you're seeking to
18      achieve?
19          MR. REILLY:  -- the intent of that is it's an
20      area that will -- it has residential units around
21      it, and it's an area that will likely be developed
22      at some point with more residential units.  And the
23      idea was to have some basis for it to come back
24      before the City.  I will say one point --
25          THE COURT:  Come back to the City towards what

31

1    end though?  Towards prohibiting an activity that's

2    otherwise contemplated under the statute?

3        MR. REILLY:  Well, Your Honor, the -- the

4    zoning authority that the City has is being

5    exercised, and what we attempted to do was put

6    minimal conditions on that would give Dr. Mohit the

7    ability to do the activities that he sought to do.

8        When he discusses the number of animals, the

9    number of animals is the number that he stated on

10    his application.  We granted what he asked for.

11        THE COURT:  But -- I get that.  I think I get

12    that.

13        But I think what Dr. Mohit has said is -- and

14    maybe I'm paraphrasing or breathing life into

15    something that he said -- but you can have a

16    substantial capital investment in a pole barn, and

17    they're not cheap.  And if it's at risk after 10

18    years, I'm not sure where that leaves you.

19        Do you understand what I'm saying?

20        MR. REILLY:  Yes, sir.

21        THE COURT:  So what's your response to that?

22        MR. REILLY:  Well, the city commission, and

23    working through -- myself and staff tried to put a

24    reasonable condition on so that there would be a

25    time for it to come back to take into account the

## EXHIBIT L – CITY'S NUISANCE CITATION FOR MOHIT'S CROPS

# COURTESY NOTICE



### CITY OF HAINES CITY

Code Compliance Division
35400 U.S. Highway 27 Haines City, Florida 33844
(863) 421-9937 – telephone / (863) 354-6619 – fax
www.hainescity.com

Date: August 30, 2018

MOHIT GYA NAGASSAR FAMILY TRUST
1530 SUNRISE PLAZA DR
CLERMONTFL, 34714-6280

Street Address: 20th ST N

My name is DAVID JIMENEZ and I am a Code Compliance Officer for the City of Haines City. As such, I am responsible for the protection of community standards in your neighborhood. I notice, and/or received a complaint of an apparent problem at the above-referenced location and saw what appeared to be the following violation(s):

Narrative: THE PROPERTY IS OVERGROWN WITH VEGETATION. ALL GRASS SHALL BE NO TALLER THAN 12 INCHES.

Violation: ALL PREMISES AND EXTERIOR PROPERTY SHALL BE MAINTAINED FREE FROM WEEDS OR PLANT GROWTH IN EXCESS OF 12 INCHES. ALL NOXIOUS WEEDS SHALL BE PROHIBITED. WEEDS DEFINED AS ALL GRASSES, ANNUAL PLANTS AND VEGETATION, OTHER THAN TREES OR SHRUBS PROVIDED, HOWEVER THIS TERM SHALL NOT INCLUDE CULTIVATED FLOWERS OR GARDENS.

Recommended corrective action: ALL VEGETATION SHALL BE CUT LESS THAN 12 INCHES UNLESS EXCLUDED BY THIS CODE. THE PROPERTY SHALL BE TRIMMED, INCLUDING AROUND ALL STRUCTURES, TREES, SHRUBS, FENCES AND ANY OTHER OBJECTS. A SECOND VIOLATION WITHIN 12 MONTHS WILL RESULT IN A NOTICE OF HEARING AND COULD RESULT IN A FINE UP TO $250.00.

You may or may not have knowledge of this violation on your property. We do understand there are moments one cannot take care of one's property as one needs to. But, the aforementioned section of the Haines City Code of Ordinances is designed to establish standards which protect property values and the livability of our neighborhoods. It is for this reason that I would welcome the opportunity to meet with you to discuss this matter and work toward the appropriate resolution.

However, because there are time limits imposed by the Haines City Code Ordinances, it should be noted that you must contact me as soon as possible as I will be re-visiting your property on 10/2/2018, to see if the problems have been resolved.

If we have not received a call or the property has not come into compliance then we will have no choice but to send you a Certified Violation Notice to your address. If you still have not complied then our only recourse is to send you a Notice of Hearing for our next Magistrate Hearing.

Please help us maintain our beautiful town so we all can enjoy it. You can contact me at 863-421-9937 to inform of compliance and/or to schedule a meeting. Thank You.

## EXHIBIT M – 25 HEIFER SEED STOCK

 Gmail

**Family Mohit <dvmohits@gmail.com>**

---

# Seedstock

3 messages

---

**Family Mohit** <dvmohits@gmail.com>                Sun, Feb 7, 2021 at 1:18 PM
To: brangus711@yahoo.com

I am interested in purchasing a starting herd of Brangus Stock from your farm. The breeding stock should come from genetic lines which possess the following genetic traits: low to moderate birth weights, moderate to high growth, moderate milk, large scrotal circumferences, and moderate to high carcass quality. Please provide me with a quote for the following animals. Thank you. Benedict Mohit.

15 - Bred Heifers 800 to 900 pounds (black faced)

10 – Weaned Heifers 400 to 450 pounds (black or black and white faced)

1 – Bull – Registered (18 to 24 months old)

---

**Thomas Rew** <brangus711@yahoo.com>                Mon, Feb 8, 2021 at 7:45 AM
To: Family Mohit <dvmohits@gmail.com>

Thank you for contacting us about our Brangus cattle   Before I can provide a proper response I need a bit more information.

We sell bred heifers and weaned heifers in the weight categories you requested.  However, you did not indicate whether these heifers should be registered or not   Since you said the weaned ones could be either black or black white faced, I am guessing you want commercial, non registered heifers   If correct, does that assumption apply to the bred heifers, as well?

40

If you only want commercial heifers I cannot tell you which bloodlines they come from. Only registered animals have pedigrees and, thus, we can state with assurance which bloodlines are represented in the registered heifer. Commercial animals do not have pedigrees and could have been sired by or carry the offspring of multiple bloodlines. We raise our own registered bulls to use in our commercial herds and select for the same genetic traits you indicate are important to you. Commercial replacement heifers are chosen from their offspring. It is easy to find a registered bull that meets your genetic requirements but very difficult to do so with commercial heifers with complete assurance. If you need to know more precise genetic information about the females you buy then I would recommend you consider registered females, both bred and/or weaned.

Having said all that, I can tell you we offer commercial bred heifers for sale each year around the end of February and the middle of May. This year they cost $1650/head. While we do not actively market bred registered heifers, we will sell a few as demand warrants. They will be available the end of May and will cost around $3000/head, depending upon quality.

Commercial weaned heifers in the weight class you specified can be available in May and July; weaned registered heifers in June. If commercial, approximately $750/head; if registered, approximately $1500/head. Once again, quality greatly effects price.

Brangus bulls are available now. We have about a dozen which are a bit older than 24 months and we have about 70 which will be 18 months beginning next month. All bulls are registered, have passed their breeding soundness exams by the veterinarian, and are individually priced from $2500 to $5500, depending upon quality. Each bull has a recorded pedigree and possesses EPDs to convey his genetic predictors for birth weight, growth, milk, scrotal circumference, and carcass traits.

If you would like to look at any or all of the candidate animals you are welcome to visit us Mon-Fri and one of us will be delighted to show you around and answer your questions. Please don't hesitate to let me know if we can be of assistance. My phone is 407-709-2040.

41

# EXHIBIT N – CITY'S RESOLUTION NO. 12-1009

## RESOLUTION NO. 12-1009

**A RESOLUTION OF THE CITY OF HAINES CITY, FLORIDA, GRANTING A CONDITIONAL USE TO PERMIT AGRICULTURAL USES IN RESIDENTIAL ZONING FOR PROPERTY LOCATED AT 2812 BAKER AVENUE IN HAINES CITY, FLORIDA; SETTING FORTH CONDITIONS; PROVIDING FINDINGS; PROVIDING EXPIRATION OF THE CONDITIONAL USE; PROVIDING AN EFFECTIVE DATE.**

---

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF HAINES CITY, FLORIDA, AS FOLLOWS:**

**Section 1.   Conditional Use Granted.** The conditional use application for the following described parcels located within the City of Haines City more particularly described as:

Parcel ID 272721-749500-012501
FLA DEVELOPMENT CO SUB PB 3 PG 60 TO 63 TRACT 25 IN NE1/4

Parcel ID 272721-749500-012101
FLA DEVELOPMENT CO SUB PB 3 PG 60 TO 63 TRACTS 21 TO 24 AND 26 LESS S 168 FT OF W 118 FT IN NE1/4 AND LESS W 25 FT AND S 50 FT OF W 157.75 FT OF TRACT 21 AND LESS S 520.2 FT OF TRACT 27

Parcel ID 272721-749500-010502
FLA DEVELOPMENT CO SUB PB 3 PG 60 TO 63 TRACTS 5 S 130 FT LESS W 10 FT AND S 130 FT OF 6 AND 11 AND 12 LESS W 10 FT AND LESS E 50 FT OF W 60 FT OF S 1/2 ALL IN NE1/4 AND LESS E 200 FT OF W 260 FT OF N 218 FT OF S 370 FT OF TRACT 12

is hereby granted to allow an agricultural use in residential zoning.

**Section 2.   Conditions of Approval.**

1.      Approval of this conditional use does not release the applicant from meeting the requirements of all other applicable sections of the City of Haines City's Land Development Regulations (including Section 20.2.2.D, regarding Conditional Uses), Code of Ordinances, and Growth Management Plan.

Page 1 of 3

2.     If the owner decides to construct a barn on the property it must be limited housing of animals and provided that no building for the housing of animals shall be located within 200 feet of any residentially zoned property.

3.     The unimproved right-of-way that is located in the middle of the property must remain open.

4.     The proposed barb wire fence surrounding the property must meet the R-1 front yard setbacks from Baker Avenue of 25 feet from the property line.

5.     The applicant shall be required to reapply in ten (10) years. This Resolution will expire on October 4, 2022.

**Section 3. Findings.** In adopting this Resolution, the City Commission hereby makes the following findings, purposes, and intent:

1.     The City Commission is empowered under Article 2 of Chapter 20 of the City's Land Development Regulations to hear and decide applications for conditional uses, to decide questions involved in determining whether conditional uses should be granted, and to grant conditional uses with conditions and safeguards appropriate under the Land Development Regulations.

2.     A written application for conditional use was submitted to the City's Community Development Department on July 31, 2012.  The application provides the chapter and section of the Land Development Regulations under which the conditional use is sought and the application states the ground on which it is requested.

3.     Based on the evidence in the record, it is hereby found that the proposed conditional use will not adversely affect the public interest and is not contrary to the intent and provisions of the City's Growth Management Plan.

Page 2 of 3

4.     The City has complied with the public hearing and notice requirements set forth in Article 2 of Chapter 20 of the Land Development Regulations.

**Section 4.** **Effective Date.** This Resolution shall take effect immediately upon its adoption.

**Section 5.** **Term.** This conditional use permit shall commence on the date of approval by the City Commission.

**PASSED and APPROVED** on first reading in regular session of the City Commission of the City of Haines City, Florida, this 4th day of October, 2012.

**ATTEST:**                                          **APPROVED:**

Vanessa Castillo, City Clerk                    Joanna Wilkinson, Mayor-Commissioner

**APPROVED AS TO FORM AND CORRECTNESS:**

Fred Reilly, City Attorney

STATE OF FLORIDA
COUNTY OF POLK

I, the undersigned duly appointed City Clerk of the City of Haines City, Florida, HEREBY CERTIFY that the foregoing is a true and correct copy of Resolution No. 12-1009, as shown in the records of the City on file in the office of the City Clerk.

WITNESS my hand and the seal of the City of Haines City, Florida, this 4th day of October, 2012.

VANESSA CASTILLO, CITY CLERK

Page 3 of 3

## EXHIBIT O – MOHIT'S APIARY PERMIT



A941198

Florida Department of Agriculture and Consumer Services
Division of Plant Industry
**CERTIFICATE OF APIARY REGISTRATION**

Section 586.045, F.S.

1911 S.W. 34th St. P.O. Box 147100, Gainesville, FL 32614-7100
Phone:(352)395-4700   Fax:(352)395-4624

NICOLE "NIKKI" PR
COMMISSIONER

ISSUED TO:

GITA-MOHIT FAMILY TRUST & BENEDICT MOHIT
GITA-MOHIT FAMILY TRUST&* MOHIT, BENEDICT
1520 SUNRISE PLAZA DR
CLERMONT, FL 34714-6203

**THIS CERTIFICATE EXPIRES:** 05/14/2022

FEE PAID:      $20.00

REGISTRATION NO.:                              **DATE ISSUED:** 05/14/2021

This is to certify that the honeybee colonies belonging to the beekeeper shown hereon have
been visually inspected for the honeybee pests and unwanted races of honeybee and meet
the requirements of Section 586.045, Florida Statues.

**THIS CERTIFICATE OF REGISTRATION MUST BE** in the immediate possession of any person engaged
in the sale or distribution of honeybees.

PDACS-08177 Revised 08/05      Firm No. 48026828      Batch No. 7594

## EXHIBIT P – STORM WATER MANAGEMENT FEES

**JOE G. TEDDER, TAX COLLECTOR**
**POLK COUNTY, FLORIDA**

**2018 REAL ESTATE PROPERTY TAX BILL**
Folio Number: 1252556 0000

ACCOUNT NUM
212727-749500-011700

**Pay, Search or Print Receipt at Polktaxes.com**

NOTICE OF AD

NAGASSAR MOHIT GITA FAMILY
TRUST
1520 SUNRISE PLAZA DR
CLERMONT FL 34714-6200

20TH ST N
FLA DEVELOPMENT CO SUB PB 3 PG
60 THRU 63 TRACTS 17 THRU 20 IN
KE1/4

Tu 407 Oper CAM
Paid 11/30/2018 O/1
11/30/2018 Rcpt #
4019539 0001
$268.16 Paid By:
NAGASSAR
MOHIT GITA
FAMILY

PLEASE PAY IN US FUNDS ON A US BANK TO JOE G TEDDER, TAX COLLECTOR - PO BOX 1189, 430 EAST MAIN ST - BARTOW, FL 33831-1189 - (863) 534-4700

AD

| | | | | | |
|---|---|---|---|---|---|
| C100 | POLK COUNTY | | | | |
| | GENERAL REVENUE FUND | 5 6815 | 0 532 | 10.532 | 59 04 |
| | TRANSPORTATION/ROADS | 1 1000 | 0 532 | 10.532 | 11 59 |
| | EMERGENCY MEDICAL | 0 2500 | 0 532 | 10.532 | 2 63 |
| | NE GOVT CENTER | 0 1250 | 0 532 | 10.532 | 1 32 |
| 5200 | POLK COUNTY SCHOOL BOARD | | | | |
| | GENERAL FUND | 4 7810 | 0 532 | 10.532 | 50 04 |
| | LOCAL CAPITAL IMP | 1 5000 | 0 532 | 10.532 | 15 80 |
| 420 | CITY OF HAINES CITY | 7 5835 | 0 532 | 10.532 | 79 93 |
| | SOUTHWEST FLORIDA WATER MX | 0 2955 | 0 532 | 10.532 | 3 11 |

TOTAL MILLAGE    21                    AD VALOREM TAXES

NON-AD VALOREM ASSESSMENTS

UHC5  HAINES CITY STORMWATER UTILITY          1 unit @   13.000          $3 00

RETURN THIS PORTION FOR YOUR RECORDS

$3 00

COMBINED TAXES AND ASSESSMENTS 277 25

| If Paid By Please Pay | Nov 30 2018 268.16 | Dec 31 2018 268.83 | Jan 31 2019 271.70 | Feb 28 2019 274.48 | Apr 02 2019 283.57 |
|---|---|---|---|---|---|

**2018 REAL ESTATE PROPERTY TAX BILL**
Folio Number   1252656 0000

Now

NAGASSAR MOHIT GITA FAMILY
TRUST
1520 SUNRISE PLAZA DR
CLERMONT FL 34714-6203

Tu 407 Oper CAM Paid 11/30/2018 D/1 11/30/2018 Rcpt # 4019639 0001      $268.16 Paid By. NAGASSAR MOHIT GITA FAMILY

**JOE G. TEDDER, TAX COLLECTOR**
**POLK COUNTY, FLORIDA**

**2017 REAL ESTATE PROPERTY TAX BILL**
Folio Number 1243576 0000

ACCOUNT NUMB
**212727-749500-011700**

## Pay, Search or Print Receipt at Polktaxes.com

NOTICE OF AD VALOREM TAXES AND

Ta 07 Oper NGG
Paid 11/17/2017 On
11/13/2017 Rcpt #
7033328 0001
$571.67 Paid By

NAGASSAR MOHIT GITA FAMILY
TRUST
1620 SUNRISE PLAZA DR
CLERMONT FL 34714-5203

20TH ST N
FLA DEVELOPMENT CO SUB PB 3 PG
60 THRU 63 TRACTS 17 THRU 20 IN
NE1/4

PLEASE PAY IN US FUNDS ON A US BANK TO JOE G TEDDER, TAX COLLECTOR - PO BOX 1189, 430 EAST MAIN ST - BARTOW, FL 33831-1169 - (863) 534-4703

AD VALOREM

| | | | | | |
|---|---|---|---|---|---|
| C100 | POLK COUNTY | | | | |
| | GENERAL REVENUE FUND | 5.6815 | 9,434 | 9,434 | 53.60 |
| | TRANSPORTATION/ROADS | 1.1000 | 9,434 | 9,434 | 10.38 |
| S200 | POLK COUNTY SCHOOL BOARD | | | | |
| | GENERAL FUND | 5.0140 | 9,434 | 9,434 | 47.31 |
| | LOCAL CAPITAL IMP | 1.5000 | 9,434 | 9,434 | 14.15 |
| T420 | CITY OF HAINES CITY | 7.5855 | 9,434 | 9,434 | 71.60 |
| WSW | SOUTHWEST FLORIDA WATER MX | 0.3131 | 9,434 | 9,434 | 2.95 |

| | TOTAL MILLAGE | | AD VALOREM TAXES |
|---|---|---|---|

NON-AD VALOREM ASSESSMENTS

RETAIN THIS PORTION
FOR YOUR RECORDS

| F420 | HAINES CITY FIRE SERVICES | | | 277.71 |
|---|---|---|---|---|
| URCS | HAINES CITY STORMWATER UTILITY | 1 unit @ 221.560 | 221.56 |

439.67

COMBINED TAXES AND ASSESSMENTS 659.05

PAY ONLY

| If Paid By Please Pay | Nov 30 2017 671.67 | Dec 31 2017 678.67 | Jan 31 2018 653.57 | Feb 28 2018 632.66 | Mar 31 2018 599.56 |
|---|---|---|---|---|---|

**2017 REAL ESTATE PROPERTY TAX BILL**
Folio Number 1243576 0000

*RETURN WITH PAYMENT*

Nov

NAGASSAR MOHIT GITA FAMILY
TRUST
1620 SUNRISE PLAZA DR
CLERMONT FL 34714-5203

Jan 31 2018     665.

6

PLEASE PAY IN US FUNDS ON A US
Ta 07 Oper NGG Paid 11/17/2017 On 11/13/2017 Rcpt # 7033328 0001    $571.67 Paid By.

47

# EXHIBIT Q – CITY'S DEFINITION OF "DEVELOPMENT"

## BASIC ALLEGATIONS OF COMPLAINT

1. The Complaint alleges that the CITY, through its ordinances, "deprives Mohit of the vested rights to the existing agricultural use of his property resulting in inverse condemnation and regulatory taking of his farm firm."

2. Where a party seeks appellate review of an administrative action, the circuit court must determine: (1) whether procedural due process was afforded, (2) whether the essential requirements of the law were observed, and (3) whether the administrative findings and judgment are supported by competent, substantial evidence." City of Deerfield Beach v Vaillant, 419 So. 2d 624, 626 (Fla. 1982).

3. In the instant case, MOHIT submitted an application for a Conditional Use Permit with the CITY and began discussions with City staff about proposed agricultural activities. As will be explained more fully below, MOHIT later unilaterally withdrew the application without the CITY taking any governmental action concerning MOHIT's proposed agricultural activities.

4. When submitting his application, MOHIT asserted that the CITY's jurisdiction to take any action related to his proposed agricultural activities were preempted by Section 823.14, Florida Statutes (Florida Right to Farm Act) (see Paragraphs 30, 39, and 50 of the Complaint).

5. In order to provide MOHIT with due process concerning consideration of his proposed agricultural activities, the CITY's staff was required to evaluate MOHIT's application by considering both statutory standards and local Land Development Regulation standards, including the following:

> Section 3.1.1 (General) of the CITY's Land Development Regulations provides that "The provisions of these regulations shall apply to all development activity within the

CityMotionToDismiss102_2014

2

**2014CA-004014-0000-00**          **Received in Polk 10/21/2014 10:18 PM**

48

corporate limits of the City of Haines City, Florida. No development activity, as defined in the regulations, shall be undertaken without prior authorization pursuant to those regulations."

Section 4.2.1 (Terms) of the CITY's Land Development Regulations specifically defines "development" as: "A man-made change to improve or unimproved real estate, including, but not limited to, buildings or other structures, mining, dredging, filling, grading, paving, excavating, drilling operations, or permanent storage of materials."

Section 166.033, Florida Statutes, requires a municipality to "give written notice to the applicant" whenever it "denies an application for a development permit" including appropriate citations to the "legal authority for the denial of the permit."

**IMPORTANT NOTE**: The Section 4.2.1 definition of "development" does not exclude agricultural or farming activities.

6. Paragraphs 12 and 13 of the Complaint allege that CITY's Land Development

Regulations (Sections 5.2 and 20.2.1) constitute the "duplication of State regulation of

agriculture" in violation of "FS 823.14 and FS 163.3162."

7. The purpose of Section 823.14, Florida Statutes (Florida Right to Farm Act) is to

"protect reasonable agricultural activities conducted on farm land from nuisance suits." The

purpose of Section 163.3162 is "to protect reasonable agricultural activities conducted on farm

lands from duplicative regulation."

8. The Florida Right to Farm Act includes a specific limitation that a municipality must

consider when evaluating proposed agricultural activities. Section 823.14(5) provides an express

exception about when the expansion of an existing farm operation is not permitted.

"This act shall not be construed to permit an existing farm operation to change to a more excessive farm operation with regard to noise, odor, dust, or fumes where the existing farm operation is adjacent to an established homestead or business on March 15, 1982."

Similarly, Section 163.3162(3)(f) states that:

3

**2014CA-004014-0000-00      Received in Polk 10/21/2014 10:18 PM**

Case 8:23-cv-02025-SDM-SPF   Document 1-2   Filed 09/08/23   Page 50 of 51 PageID 94

# EXHIBIT R – CITY'S ACKNOWLEDGEMENT OF THE EXPRESSED LIMITATION OF §163.3162 (3), FLA. STAT.

that "ripeness occurred on the earliest date the City enacted Ordinance to regulate and prohibit agriculture."

7. MOHIT cited the U.S. Supreme Court decision in Palazzolo v. Rhode Island for the proposition that the MOHIT's case is ripe for judicial review. The CITY strongly disagrees with MOHIT's interpretation of Palazzolo. In Palazzolo, the Supreme Court analyzed several previous Supreme Court opinions in which the central question was resolving the ripeness issue. The Supreme Court succinctly summarized the rule in these opinions by stating that:

> These cases stand for the important principle that a landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation. Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established. Id. at p. 620 - 621.

In addition, the Supreme Court clearly stated the purpose that the final decision requirement serves in resolving the ripeness issue:

> Our ripeness jurisprudence imposes obligations on landowners because "[a] court cannot determine whether a regulation goes 'too far' unless it knows how far the regulation goes." Id. at p. 622

8. MOHIT further asserted in the Opposition that the CITY is prohibited by the Duplication of Regulation provisions of Section 163.3162 and Section 823.14, Florida Statutes, from taking **any** regulatory action concerning a bona fide farm operation on land classified as agricultural land.

9. CITY readily acknowledges that Section 163.3162 (3) (Duplication of Regulation) provides the express limitation that "A local governmental entity may not exercise any of its

CityResponseToOpposition12042014

‡

**2014CA-004014-0000-00**      **Received in Polk 12/04/2014 11:00 AM**

50

powers to **adopt or enforce** any ordinance, resolution, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as agricultural land pursuant to s. 193.461." (Emphasis added). But the City also acknowledges that Section 163.3162 (3) was amended in one significant way after the decision in Wilson v. Palm Beach County, 62 So. 3d 1247 (Fla. 4th DCA 2011).

10. In Wilson the court considered a landowner's appeal of a summary judgment in favor of Palm Beach County and declared that the Right to Farm Act (Section 823.14, Florida Statutes) did not preempt the County's enforcement of ordinances enacted prior to the Act, because they did not limit farming operations.

11. Subsequent to the Wilson decision, the legislature amended the statutory language of Section 163.3162 (3). The Duplication of Regulation provision now set forth in subsection (3) was amended to add the phrase "or enforce" so that the statutory language now states that "a local governmental entity may not exercise any of its powers to adopt or enforce any ordinance, resolution, regulation, ..."

12. The Wilson court's analysis of the statutory language of Section 823.14 (6) is important to the instant case. In contrast to Section 163.3162 (3), Section 823.14 (6) (Limitation on Duplication of Government Regulation) does not include the **"or enforce"** limitation and the legislature has not taken any action to amend this specific statutory provision. Section 823.14 (6) states as follows:

> LIMITATION ON DUPLICATION OF GOVERNMENT REGULATION. — It is the intent of the Legislature to eliminate duplication of regulatory authority over farm operations as expressed in this subsection. Except as otherwise provided for in this section and s. 487.051(2), and notwithstanding any other provision of law, a local government **may not adopt** any ordinance, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as

4

CityResponseToOpposition12042014

2014CA-004014-0000-00        Received in Polk 12/04/2014 11:00 AM